C5O3WANC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   WANG,

4                   Plaintiff,

5             v.                        12 CV 793 (HB)(AJP)

6   THE HEARST CORPORATION,

7                   Defendant.

8   ------------------------------x
                                       New York, N.Y.
9                                      May 24, 2012
                                       11:30 a.m.
10
    Before:
11
                       HON. ANDREW J. PECK,
12
                                       Magistrate Judge
13
                            APPEARANCES
14
    OUTTEN & GOLDEN
15       Attorneys for Plaintiff
    BY:  ELIZABETH WAGONER
16        ADAM T. KLEIN

17  JONATHAN R. DONNELLAN
    Deputy General Counsel, Hearst Corporation
18       Attorney for Defendant
              -and-
19  PROSKAUER ROSE
         Attorneys for Defendant
20  BY:  MARK W. BATTEN

21

22

23

24

25

C5O3WANC

1        (In open court)

2            THE COURT:  All right.  I've read your letters, let's

3    try to take the issues one at a time starting with the e-mail

4    hit list.  While I agree that cooperation is certainly the way

5    to go, it doesn't mean somebody has to do something that is

6    going to be largely useless.  On a lot of these, it seems to me

7    the odds of these common words being useful are pretty slim.

8    Some of the other things, free labor, if there are more than

9    zero hits I would be surprised.  But in any event, that may be

10   appropriate for the hit list approach, having -- whether it's

11   five hits on the word "cut" and since it has got the universal

12   at the end of it that would include cutlery and various other

13   words, hardly seems useful at this stage of the case in

14   particular.

15        So, let me hear first from Mr. Klein or, sorry, I

16   can't read fast enough, Ms. Wagoner, and then I'll hear from

17   the defense on this issue.  But I'm inclined to say that a lot

18   of the list has got to go.

19            MS. WAGONER:  Thank you, your Honor.  With respect to

20   the issue you just raised about some of the terms that seem to

21   be universal, there may be some confusion about the terms that

22   we've suggested.  Because the terms cut, save, lower, that kind

23   of thing are meant to be read in conjunction with the first

24   line of that list, which specifically ties them to the words

25   overtime, labor, payroll, staff.  To try to capture e-mails

C5O3WANC

 1    that might have discussed cutting labor costs or reducing labor

 2    costs, because interns had been hired.

 3              And as I'm sure you know, one of the issues in this

 4    case is did Hearst cut their labor costs by using the unpaid

 5    labor of interns.

 6              So in that sense, the word "intern" might not

 7    necessarily be in an e-mail that discusses this sort of general

 8    principle of needing to cut labor costs.  That's why those

 9    terms are in there.

10              I did notice that defendant's submission on May 11

11    raised this issue.  Unfortunately, we didn't receive that

12    letter until yesterday.  So, we weren't able to address that

13    confusion with the Court because we just received it.  But that

14    I hope would alleviate some of the concerns about these terms

15    in the bottom half of our hit list.  As far as the terms --

16              THE COURT:  Let me stop you right there.  If I'm

17    understanding what you've now said, the document or the e-mail

18    in order to satisfy this would have to have the exact phrase

19    overtime, labor, payroll, staff, head count, etc., the next

20    four, five, six words, and somewhere else in the body of it,

21    cut, trim, etc.  Is this what you are saying?  And what are the

22    odds of that mouthful being in any document in exactly that

23    form?

24              MS. WAGONER:  Well, our hope was that it would be one

25    of these words, and then one of the words in the second -- in

C5O3WANC

```
 1   the rest of the list.

 2           THE COURT:  All right.  In any event, it seems to me

 3   lowering costs in the abstract is not something you need

 4   documents for, unless it is tied to lowering payroll costs by

 5   using interns, yes, it may have the most marginal relevance.

 6   But it does not seem like a good way to go about it at this

 7   stage of the case.

 8           Let me hear from the defense on just this portion of

 9   the keyword list.

10           MR. DONNELLAN:  Your Honor, Jonathan Donnellan on

11   behalf of Hearst.

12           The class allegations in this case are premised on the

13   fact that there is a corporate policy or practice with respect

14   to interns.  And the discovery was limited by Judge Baer for

15   this preliminary purpose of opposing our motion to strike those

16   class allegations to get to that.  That was the focus of our

17   document production, and also of the depositions which have

18   been ordered.  And, we believe, as you do, that any -- or as

19   you indicated, that any relevant documents or responsive

20   documents which are going to have to do with a corporate

21   practice or policy with respect to interns are going to have

22   the word intern, interns, internship, interning, and/or

23   interned in it, and that we agreed to do a search with those

24   five words.  In addition to producing documents with respect to

25   any of the terms and conditions of internships, in any of the
```

C5O3WANC

1    programs.

2              And there simply are not that many of those documents

3    for precisely the reasons we spelled out in our motion to

4    strike.

5              But going beyond that, these words are extremely

6    common, and the sort of laborious approach here starts to bring

7    you into a class-wide discovery or a broader scope of

8    discovery, which our motion is specifically designed to avoid.

9              The whole reason we brought the motion to strike at

10   the outset was because the allegations in the complaint about a

11   class theory which remain on information and belief are

12   unfounded and have no basis in fact.  And to the extent that

13   there are going to be these sorts of policy or practices, and

14   have to do with reductions or savings through the use of

15   interns, it is going to include that word in it.

16             So we believe that we have fully complied with respect

17   to the scope of discovery, and given plaintiffs everything they

18   need at this point to oppose our motion to strike.

19             THE COURT:  Let me hear, Ms. Wagoner, anything else on

20   the bottom half of the e-mail hit list that you want to say?

21             MS. WAGONER:  Just one more point, your Honor, is that

22   we have asked that the searches be run on just two custodians,

23   and the searches are limited in temporal scope because

24   defendant has informed us that they have an auto delete policy

25   after 60 days.  So we are not actually talking about a very

C5O3WANC

large body of e-mails that would need to be searched.

And my final point, in response, would just be that if labor savings are being discussed, for example, or if an order has been given to an intern to run an errand or do a delivery or something like that, the word "intern" isn't going to appear necessarily. Somebody's name might appear, for example.

THE COURT: All right. Well, that's a second class of your potential discovery. But how does your suggestion fit in with what Judge Baer in his order of April 12 said you can have discovery about?

MS. WAGONER: Well, Judge Baer's order basically came down before there had been any discovery at all. We had an initial conference on April 5. Defendant filed its motion on April 4. So at that point it was not clear exactly what kind of discovery we would be getting and what the scope would be. That was left for the parties to determine over the course of the 30-day discovery period, and Judge Baer did instruct us to inform the Court if it turned out that there was insufficient information. And one large category of information that we have not gotten through the discovery that we've gotten and the witnesses we've been given is what interns actually did at Hearst. That is an overarching theme I think of all of these disputes.

THE COURT: Isn't that likely something you get by deposition?

C5O3WANC

1          MS. WAGONER:  Well, we had hoped it would be, your

2     Honor.  And we had a deposition earlier this week of one of the

3     HR representatives the defendant has given us, Sherry Roberts.

4     And we questioned her about the 35 declarations that were

5     submitted in connection with defendant's motion.  And she was

6     unable to testify about any of the allegations in the

7     declarations going to what the interns actually did, and said

8     specifically that only the declarants themselves, only people

9     who worked on the magazines, would have that information.

10    We're in a position now --

11         THE COURT:  Isn't that the problem that defendants

12    point out with your class approach -- I've not read the

13    declaration, I skimmed very quickly this morning their motion

14    to strike the class and collective allegations.  And they seem

15    to argue that while Hearst is one corporate entity, each

16    magazine runs its own internship program.

17         MS. WAGONER:  Well, we feel that we are entitled to

18    challenge the allegations that each of those declarants made

19    and prove that --

20         THE COURT:  The question is how.  And it doesn't seem

21    like these keywords, particularly if it is limited to the last

22    60 days as of today, when it's probably in the midst of

23    whatever semester-wise internship program is going on, this

24    doesn't seem the right way to go about it.

25              So without further discussion, other than you can look

C5O3WANC

1   at Mr. Klein's note and see if you have anything you have to

2   add, otherwise I'm going to -- is there?

3               MS. WAGONER:  It goes to a different issue.

4               THE COURT:  Hold the different issue.

5               MS. WAGONER:  All right.

6               THE COURT:  As to the bottom half of this list, the

7   overtime or labor and saved, cut, whatever, I'm denying that at

8   this stage.  Meaning at this opposition to the motion stage.

9   If the class is certified, or a collective action is issued,

10  this may be an appropriate way to get at information.  But it

11  isn't at this stage.

12              As to the other thing, I guess, first of all,

13  Mr. Donnellan, is it correct that all e-mail disappears in 60

14  days?

15              MR. DONNELLAN:  Unless the individual archives it.

16  And we have searched the archives and we have produced e-mails

17  over a six-year period going back to the limitations period.

18              THE COURT:  All right.  As to these other phrases, it

19  seems like you're doing several things with this list.  One is

20  what did particular interns do.  Did they run errands.  Which

21  I'm not sure this is the way to get it, particularly from HR.

22  As to FIT or college, university, etc., and Department of Labor

23  and minimum wage, those might be appropriate.

24              So why don't you first address the college, FIT, DOL

25  minimum wage group, and then after we all discussed that, deal

C5O3WANC

1    with ones that seem to deal with what particular interns such

2    as the named plaintiff had to do.

3         MS. WAGONER:  Sure.  The Hearst magazines has a policy

4    that interns are required to purchase school credit as a

5    condition of working as an intern at Hearst.  They're required

6    to purchase it from a college or university.  That is --

7         THE COURT:  I think that may be semantics.  I think

8    the way they described the program is to be eligible for an

9    unpaid internship, you have to get college credit.

10        If that is their position, why do you need discovery

11   on that?  It seems to be that it is admitted.  If it is not

12   admitted in the right place for the right buzz words, you can

13   quote it neatly in your papers, then it seems to me we can do a

14   stipulation or you can do a request to admit.  You don't need

15   e-mails about it.  Or are you suggesting that that's not their

16   policy?

17        MS. WAGONER:  We would like to explore the contours of

18   the policy and the limits to the policy and the enforcement of

19   the policy.  And that is the reason that these terms are in

20   here.

21        THE COURT:  In what way?  Frankly, you say that it is

22   an illegal deduction to wages, the wages being zero, but that's

23   another point.  They say, as do many employers, that to be an

24   unpaid intern you have to get school credit for it.  That's

25   either legal or illegal.  I don't understand what you mean by

C5O3WANC

1   the contours of it.

2                Are you suggesting that they let people like Ms. Wang

3   submit something that isn't true or that's what they allege

4   now?  That they wink at this?

5                I'm not sure what you are doing or what you want to do

6   with this discovery.

7                MS. WAGONER:  We'd just like to know the extent to

8   which it was enforced.  Was it enforced?  Did they make

9   exceptions to it?

10                THE COURT:  Is there any allegation that it wasn't

11   enforced?  Is that your allegation?

12                MS. WAGONER:  No.

13                THE COURT:  Then what do you need to explore?  Your

14   allegation is they tied the internship to an illegal deduction

15   from wages.  They admit that.  Not the illegal part, not the

16   tying, but they admit their policy, as I understand it, and you

17   all can correct me if I'm wrong, that their policy is you can't

18   be an unpaid intern unless you're getting school credit for it.

19   So, the facts seem admitted.  The buzz words you each want to

20   put on it, one it's a valid internship program, the other is it

21   is an illegal deduction from wages, is a legal argument you'll

22   make to Judge Baer.

23                What am I missing?

24                MS. WAGONER:  I think we want as much information

25   about the policy as we can get.

C5O3WANC

1          THE COURT:  You can ask at the deposition.

2          Now, the particular running errands, why would that be

3      in HR?

4          MS. WAGONER:  First of all, HR had interns in its own

5      department.  So, if these are the custodians of e-mails, it

6      would be helpful to see some examples of instructions that HR

7      interns were given, for example.

8          THE COURT:  If that's no different than the fashion

9      magazine, Popular Mechanics and whatever the other Hearst

10     magazines are that I'm not remembering names of, if you're only

11     doing this from two custodians, I don't understand what the

12     point is of this.

13         MS. WAGONER:  The point of terms that are looking

14     for --

15         THE COURT:  Running errands.

16         MS. WAGONER:  -- instructions and that kind of thing?

17         THE COURT:  Yes.

18         MS. WAGONER:  Again, it is to try to get discovery

19     about what the interns actually did on the magazines or in the

20     corporate departments.

21         THE COURT:  Did you ask the HR deponent what her

22     interns did?

23         MS. WAGONER:  Well, it matters because --

24         THE COURT:  First answer my question then add.

25         MS. WAGONER:  Yes.

C5O3WANC

1          THE COURT:  What did -- I assume it's a she -- what

2     did she say?

3          MS. WAGONER:  She said that she didn't know because

4     she didn't supervise that person.  Presumably there are other

5     deponents would who know.  We're still exploring that.

6          But, the problem here is the deponent we've had so far

7     said that the interns' work didn't provide any benefit to

8     Hearst, said what they do isn't a benefit to them.

9          If we have deponents who are saying that these people

10    aren't giving us any benefit, they are not doing anything for

11    us, and we have e-mails that contradict that, it would be

12    helpful to impeach these witnesses.

13         THE COURT:  We are not dealing with impeachment as

14    such at this stage.

15         MS. WAGONER:  I think, though, that we are trying to

16    challenge their characterization about whether or not the

17    interns performed beneficial work for them.

18         THE COURT:  What interns?  Either there is a policy

19    here, which is what you're arguing, or there isn't.  If the

20    class is certified, then you get to explore what the interns

21    did, whether that's a benefit to Hearst or not.

22         Right now, as I think I understand what Judge Baer has

23    said, is you're supposed to get whatever is the corporate

24    procedures, policy, etc., for dealing with interns.  So,

25    whether particular intern X who worked for somebody else in HR

C5O3WANC

1    that wasn't the deponent ran errands or not, seems like much

2    too small of any sort of anecdotal sample to get you beyond

3    what Ms. Wang has already said in her complaint as to her

4    running errands or the like.

5         I'm trying in order for you to get this discovery done

6    and get your case moving on the merits either as to an

7    individual, a collective action or a class, not get you bogged

8    down on something that doesn't look like it's going to get you

9    anywhere.

10        MS. WAGONER:  And I appreciate that.  But I think that

11   some of these terms would pick up actual -- would pick up

12   policies.  For example, there is one memorandum that we

13   received that discusses using interns as a policy to perform

14   deliveries for the magazine.  So, that's an example of a

15   class-wide issue, if this is something that interns were

16   actually required to do not at a specific magazine, but we use

17   this type of worker to do this type of work.

18        THE COURT:  If it's we use this type of worker,

19   presumably it would have the word "intern" in it.

20        MS. WAGONER:  Or it could just be "unpaid worker" or

21   it could be "the students."

22        THE COURT:  If "unpaid worker" and "student" are

23   synonyms in your mind for intern, then I would think that can

24   get run through like the variations on the word "intern."

25        Any objection to that from the defense, Mr. Donnellan?

C5O3WANC

1              MR. DONNELLAN:  No, your Honor.

2              THE COURT:  Good.  Anything else?

3              MS. WAGONER:  No, your Honor.  Not on this point.

4              THE COURT:  Okay.  Then other than those words, no hit

5    list.

6              Now, the other issue was samples of e-mails with

7    interns.  Has that been done for example for any e-mails

8    between these two custodians and Ms. Wang?

9              MR. DONNELLAN:  Your Honor, there has, and we have I

10   believe attached those to our motion papers.  With respect to

11   the other names, there have been and I think this is reflected

12   in our papers, approximately 3,000 interns over the six-year

13   period.  And it seem to us extraordinarily unlikely to the

14   extent that we are distinguishing between class discovery and

15   merits discovery, that to the extent that what the allegations

16   are here is there a corporate policy or practice with respect

17   to the use of interns, that any relevant e-mails would not have

18   the words "intern" or some variation of that.  And there would

19   be some sort of a communication with an individual intern which

20   would not have that word in it.  That's in particular given the

21   testimony that we received from the HR declarant, the head of

22   HR Sherry Roberts, where she basically said she's had no direct

23   contact with interns at all.  And they're going to have an

24   opportunity to speak with the other HR representative as well

25   tomorrow at deposition.

C5O3WANC

1          But the fact of the matter is to the extent we are

2     focused on the class, we are focused on policies and practices

3     with respect to interns, that there is not going to be a

4     document that has a name in it and is not going to have one of

5     those words.

6          THE COURT:  I guess the question I have, Ms. Wagoner,

7     is, first of all, so this isn't just a frolicking detour, how

8     would you pick the 50 names and know that they had any

9     interaction with HR?  That's question number one.

10          MS. WAGONER:  We would have to work with defendant to

11     determine which are the 50 -- I imagine we would have to

12     actually ask the custodian of the e-mail account who she

13     corresponded with in order to --

14          THE COURT:  It sounds like from one of your two

15     custodians the answer is nobody.

16          MS. WAGONER:  We learned that on Monday.

17          THE COURT:  Why don't you ask tomorrow what interns if

18     any that HR person supervised.  And then depending on what he

19     or she says, ask some more questions to find out what the

20     content of those e-mails likely were, and then either you'll

21     all agree to search for those or I'll be seeing you shortly

22     after the deposition and you'll order that part of the

23     transcript expedited and I'll rule on it.

24          MS. WAGONER:  I think that makes sense as a solution

25     to figure out who these people are.  I will say, though, that

C5O3WANC

1   defendant has refused to give us the names of any intern which

2   is another issue that I imagine you're getting to, but it would

3   at this point be difficult to ask that question and get an

4   answer because we've been told that defendant will not answer

5   questions about specific individuals.

6          THE COURT:  As to handling this issue before we get to

7   the other redacted documents, Mr. Donnellan.

8          MR. DONNELLAN:  Well, your Honor, I might be able to

9   short circuit things a bit because I expect when they ask

10  Ms. Helmus tomorrow which interns, the answer she is going to

11  say is interns that were in the HR department.

12         THE COURT:  Okay.  Any objection to giving those

13  people's names?

14         MR. DONNELLAN:  I object to giving their names, but I

15  would not object to running a search on those names and

16  producing e-mails with the names redacted, as we've done with

17  any other documents with those names.  This goes to the final

18  issue if I can turn to that now.

19         THE COURT:  Let me rule on this first.  Which is since

20  you've just volunteered to do it, without the need for it to be

21  asked at the deposition, subject to whatever I rule finally on

22  the whole redaction issue, you'll now search for the e-mails

23  that the HR person had with her interns.

24         MR. DONNELLAN:  Yes.

25         THE COURT:  That's done.

C5O3WANC

1        Now, let's turn to the more general redaction issue

2   and why don't you go first, Mr. Donnellan.

3        MR. DONNELLAN:  Well, your Honor, this goes back to

4   the initial order of Judge Baer.  Following our status

5   conference plaintiffs had written in a letter on April 6 to

6   Judge Baer saying that they had had the opportunity to closely

7   review the motion and the evidence on which it relies, and they

8   asked for three things.  One was documents concerning terms and

9   conditions of the programs, which we've agreed to and produced.

10  Depositions of the declarants.  And number three, contact

11  information for defendants' current or former interns and their

12  supervisors.

13       And on the second one, the declarants, the judge ruled

14  they could have the HR representatives.  On the third one he

15  denied that request.  And what we had argued to the judge is

16  that essentially this would be giving plaintiffs precisely what

17  they are seeking through the preliminary certification process.

18  Which is in the event that they obtain preliminary

19  certification of the class, then they get the names, they can

20  make contacts with the proposed class members, and they can

21  decide whether or not they want to opt into the class.

22       But this is a little bit putting the cart before the

23  horse.  And certainly for purposes of determining what a

24  corporate policy or practice is, it has absolutely no relevance

25  at all.  So, that is the reason why, when we produced documents

C5O3WANC

|    |                                                                  |
|----|------------------------------------------------------------------|
| 1  | which had intern names on it, we redacted them consistent with   |
| 2  | the scope of Judge Baer's first order, and then his second       |
| 3  | order which specifically noted that this was preliminary         |
| 4  | discovery for purposes of opposing our motion.                   |
| 5  |           THE COURT:  Ms. Wagoner.                                |
| 6  |           MS. WAGONER:  Your Honor, there is just no basis for   |
| 7  | redacting these documents that are responsive and there is -- I  |
| 8  | don't understand any -- I don't see any reason for it to         |
| 9  | actually be done.  As a practical matter, at the depositions it  |
| 10 | becomes very difficult to ask questions about documents that     |
| 11 | have been redacted when we can't identify a particular person.   |
| 12 |           THE COURT:  Was that a problem yesterday?              |
| 13 |           MS. WAGONER:  Well, yesterday the witness didn't       |
| 14 | interact with the intern program.  It's really the deposition    |
| 15 | tomorrow where we're going to be dealing with this.              |
| 16 |           THE COURT:  You won't have the new documents of        |
| 17 | tomorrow's deponents contact with her interns since              |
| 18 | Mr. Donnellan just agreed to do it.  You won't have them before  |
| 19 | tomorrow.  So, unless some of the documents you already have     |
| 20 | are ones you're going to ask this witness about, in which case   |
| 21 | one solution is to give a list to Mr. Donnellan or his           |
| 22 | colleagues of the documents you're going to inquire about that   |
| 23 | were redacted, which is something that is suggested by the       |
| 24 | federal rules notes on deposition anyway, and have him bring     |
| 25 | the unredacted copies for the witness to look at.  So if the     |

C5O3WANC

| 1 | witness can't place a document without knowing which intern |
|---|---|

1    witness can't place a document without knowing which intern

2    name it belongs to, that can be resolved.  And for purposes of

3    the transcript, you can come up with a code for each one, so

4    you know when you're talking about the same intern more than

5    once, that will be intern A every time, and the next intern

6    will be intern B, and Mr. Donnellan or the folks from Proskauer

7    defending the deposition will keep a list that they will keep

8    as officers of the court that say intern A was really intern

9    Sherlock Holmes, and intern B was intern John Watson and etc.,

10   etc.  And at some point if that's relevant for this motion, as

11   opposed to merits if you win the motion, or win certification

12   ultimately, then you get the names.

13          If this had come to me before it was done and there

14   were delay issues, which apparently there were, I might have

15   felt differently.  But at this point with it all being done

16   except for the new documents about to come, unless you can say

17   there is something other than tomorrow's deposition that you

18   need the names for, at this stage of the litigation, it seems

19   to me you are trying to get through the back door, part of the

20   information that you'll only get otherwise if collective action

21   status is granted.

22          MS. WAGONER:  Just so I understand the proposal, your

23   Honor.  Is it that we would also have the name in the document

24   that we are -- the name of the intern that we want to inquire

25   about?  For example, we've got spreadsheets that list every

C5O3WANC

1    intern who work for Hearst for an entire semester.  I have

2    copies of them here if you'd like to see them.

3            THE COURT:  Sure.  With the names redacted or in it?

4            MS. WAGONER:  With the names redacted.  That's the

5    only version that we've got.

6            THE COURT:  What's the relevance?

7            MS. WAGONER:  Well, for instance, some of these, there

8    is a column on the spreadsheet, it might help if you had it in

9    front of you.

10           THE COURT:  Sure.  Okay.

11           MS. WAGONER:  There is a column that says "paid" on

12   these spreadsheets, that says "credit" and "paid."  Under the

13   "paid" column there are some people where it says "yes."  We

14   want to understand why that is.  We want to know why, for

15   example, redacted intern number 100 was paid.  I imagine the

16   deponent will not know why that was without seeing the name and

17   knowing the circumstances around that.

18           THE COURT:  I am not sure the deponent will know even

19   seeing the name, but why isn't my solution, which is they'll

20   bring the unredacted copy of this tomorrow, so you'll say why

21   was intern number 121 paid, and she'll look at her list and if

22   she needs to know that was Sherlock Holmes, she'll then answer

23   accordingly.  But with just calling the person intern 121.

24           MS. WAGONER:  We would not have a copy of that

25   document that she was looking at?  We would just use this one?

C5O3WANC

1          THE COURT:  Yes.

2          MS. WAGONER:  Okay.  I guess my concern would just be

3     if there were particular identifying circumstances, the witness

4     then won't testify about that.  And because there were

5     redactions and because their identities were subject to some

6     kind of protection that seems to us overbroad, that she

7     wouldn't be able to talk about what the circumstances were.

8          THE COURT:  First of all, let's worry about what the

9     witness can and can't do when you do it.  And obviously

10    defendant will be at risk that if this blows up, the witness

11    will come back.  But, unless you can tell me why, other than

12    the issue of why some were paid and most were not, needs the

13    identification of particular names at this stage, again, it

14    seems to me this is material that you will get if collective

15    action certification is granted, but otherwise, what is the

16    relevance?  And that's what I still haven't heard an answer to.

17         MS. WAGONER:  Well, and I would just say that the

18    relevance is that absent name, identifying circumstances should

19    be on the table tomorrow.  If the answer is, well, she is the

20    granddaughter of a Hearst.  We don't want that to be hidden

21    simply because we don't have the name.  That's what I'm

22    concerned about.

23         THE COURT:  I don't think that will be a problem.

24    Here are the documents back.

25         So the redaction is allowed.  However, for the new

C5O3WANC

1    documents you're about to produce, Mr. Donnellan, there better

2    not be any delay because of the redaction.

3              MR. DONNELLAN:  No, your Honor, we'll produce them as

4    soon as possible.

5              THE COURT:  Let's put a date on that.  So that as soon

6    as possible doesn't --

7              MR. DONNELLAN:  Next Wednesday, your Honor.

8              THE COURT:  Does that work?

9              MS. WAGONER:  Yes, your Honor, it does.

10             THE COURT:  Okay.  Last thing I think is the deadlines

11   which now with the passage of a week may need some further

12   revision.  Is the June 4 and June 15 date still what you all

13   want?

14             MR. DONNELLAN:  Yes, your Honor.

15             MS. WAGONER:  That's fine with us, your Honor.

16             THE COURT:  Even though, let's just make sure we can

17   all count.  You're not getting the additional documents until

18   May 30.

19             MS. WAGONER:  That's true.

20             THE COURT:  You'll still be able to get it done by

21   June 4?

22             MS. WAGONER:  It would be helpful to have an extra

23   week to be able to review those documents, because we don't

24   know how many there are right now, your Honor.  So I think if

25   June 15 deadline for us --

C5O3WANC

 1          THE COURT:  That gets you more than a week.

 2          MS. WAGONER:  My math is bad, your Honor.  I think I'm

 3     trying to say June 11.

 4          THE COURT:  Let's move you from June 4 to June 7.  And

 5     you were giving yourself 11 days it looks like, so June 18 for

 6     the reply.  Does that work?

 7          MR. DONNELLAN:  Yes, your Honor.

 8          THE COURT:  All right.  Anything else we need to deal

 9     with or anything you anticipate or is this going to end my role

10     subject to whatever calls I get from you tomorrow from the

11     deposition in this matter at least at this stage of the case?

12          MR. DONNELLAN:  Your Honor, I just want to make sure

13     if we are going to go forward with the deposition tomorrow,

14     there is not going to be an attempt to leave it open given the

15     fact we'll be producing more documents on Wednesday.  If that's

16     the case, I prefer to set a different date for the deposition.

17          MS. WAGONER:  We would be open to that.  For example,

18     doing the deposition next Friday instead of this Friday.  But I

19     think we would then need more time than June 7 to be able to

20     deal with the --

21          THE COURT:  These e-mails don't strike me, you can ask

22     the generalized questions without names, or if names are going

23     to come up, have the witness write down for you, Mr. Donnellan,

24     and start calling them intern 1, 2, or A, B, C, whatever, you

25     keep the list.  When she referred to intern A, it meant

C5O3WANC

1    Sherlock Holmes, and then when you redact the e-mails, you'll

2    use the same code that was used at the deposition so it can

3    link up.  Does that make sense?

4              MR. DONNELLAN:  That makes sense, yes.  Thank you.

5              THE COURT:  So since I don't want to make this any

6    more extended than it already is, let's proceed with the

7    deposition tomorrow.  On that ground rule, I guess technically,

8    two technical points.  One, pursuant to 28 U.S. Code Section

9    636 and Federal Rule of Civil Procedure 72, you all will have

10   14 days from this conference to file any objections to my

11   rulings with Judge Baer.  Failure to do so within 14 days

12   constitutes a waiver for all further purposes.  And since

13   you've heard my ruling, the 14 days begins immediately

14   regardless of how soon you get the transcript.

15             Also, since I am talking about the transcript, and so

16   I don't forget, I'm directing both sides to order the

17   transcript and split the cost accordingly.

18             Finally, it is my practice at first conferences to

19   remind parties that they have the option pursuant to 28 U.S.

20   Code Section 636(c) to agree to have the case in front of me

21   for particular motions or for all purposes with direct appeal

22   rights to the Second Circuit.  It requires two to tango.  Or,

23   to put it differently, unless both sides say yes the case

24   remains with Judge Baer.

25             Anything further with regard to that?  Or are we ready

C5O3WANC

```
 1    to adjourn.

 2              MR. DONNELLAN:  Nothing further, your Honor, for

 3    defendants.

 4              MS. WAGONER:  Nothing further from plaintiff.

 5                               oOo

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```