1

C64WglaC

1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  ERIC GLATT, on behalf of
3  himself and all others
4  similarly situated, et al.,
4
5                    Plaintiffs,
5
6            v.                        11 CV 6784 (WHP)
6
7  EDEN M. ANTALIK and FOX
7  SEARCHLIGHT PICTURES, INC.,
8
8                    Defendants.
9
9  ------------------------------x
10                                     New York, N.Y.
10                                     June 4, 2012
11                                     12:00 p.m.
11
12  Before:
12
13                  HON. WILLIAM H. PAULEY III,
13
14                                       District Judge
14
15                         APPEARANCES
15
16  OUTTEN & GOLDEN, LLP
16        Attorneys for Plaintiffs
17  BY:  ADAM T. KLEIN
17       ELIZABETH WAGONER
18
18  PROSKAUER ROSE, LLP
19        Attorneys for Defendants
19  BY:  ELISE M. BLOOM
20       AMY F. MELICAN
21
21
22
23
24
25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

                                                        2
        C64WglaC
 1                  (Case called)
 2                  THE COURT:  Please be seated.
 3                  MS. WAGONER:  Elizabeth Wagoner, with Outten & Golden,
 4      for the plaintiffs.
 5                  MR. KLEIN:  Adam Klein, Outten & Golden, also for the
 6      plaintiffs.
 7                  MS. BLOOM:  Good morning, your Honor.  Elise Bloom,
 8      Proskauer Rose, for the defendants.
 9                  MS. MELICAN:  Amy Melican, Proskauer Rose, also for
10      the defendants.
11                  MS. BLOOM:  Your Honor, Mancuso is our IT person, and
12      I just brought him because I didn't know the extent to which
13      ESI was going to be an issue, but he won't be speaking on the
14      record unless you ask.
15                  THE COURT:  Thank you.  Good morning.
16                  We have a couple of issues to deal with.  I'd like to
17      turn first, before we get to the discovery disputes, and deal
18      with Searchlight's proposed motion to strike plaintiffs' class
19      and collective allegations.
20                  Ms. Bloom, isn't that motion really premature?
21                  MS. BLOOM:  Your Honor, it's not premature at this
22      juncture, and we thought about raising it initially when the
23      complaint was first filed, but the difference between now and
24      then is that there has been some discovery.
25                  THE COURT:  But discovery's not complete, and, as is
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300

3

C64WglaC
```
 1   evidenced by the letters that I've gotten, you're resisting
 2   discovery.
 3              MS. BLOOM:  In terms of discovery not being --
 4              THE COURT:  Does it really make any sense to file this
 5   kind of motion, especially when you've got to be familiar with
 6   my decision in Chinenski in which I said this is frowned upon.
 7   My frown is not going to turn into a smile on this motion.
 8   You'll have a chance when there's a motion for collective
 9   action to address it on the merits.
10              MS. BLOOM:  Your Honor, I am aware of your decision,
11   and why we believe that the situation is different, and again,
12   we're not saying no discovery; our position is that to the
13   extent that what discovery should remain should be anything
14   focused on what the plaintiffs believe they would need either
15   for a motion for notice or for class certification and they've
16   noticed these 30(b)(6) depositions.  They've noticed these two,
17   or they have subpoenaed but then they cancelled, I think that
18   they're going to reschedule these two depositions for people
19   that worked on Black Swan, we think that should go forward.
20   But with regard to broad-based discovery, we believe that based
21   on the discovery that's been conducted to date that it is
22   appropriate at this point to limit discovery to issues that
23   would go to the certification and the collective action.
24              The other thing I would point out, your Honor, is that
25   there is at least some precedent in this type of a case for
```

4

C64WglaC

1   proceeding in this way.  There is another case just like this
2   that was filed by the plaintiffs' counsel against the Hearst
3   Magazine Group.  It's pending before Judge Baer.  Magistrate
4   Judge Peck is the magistrate on that case.  In that case, at
5   the outset, a motion to strike was filed, and Judge Baer in
6   that case, my understanding, has limited discovery to the class
7   type issues and is then going to entertain that motion.  And
8   while I understand that wouldn't be binding on your Honor, I do
9   think this type of claim involving interns is so fact specific
10  that we believe that there are no circumstances under which a
11  class could ever be certified.  You've got the FLSA piece and
12  then on the Rule 23 piece you've got the additional problem of
13  the Rules Enabling Act, which, under the Duke decision, because
14  we will have individualized defenses to each claim because it
15  won't be enough for the plaintiffs to say this person worked
16  and wasn't paid, our defense is that person was an intern and
17  therefore not entitled to be paid, and that determination is
18  going to turn on the individual facts that the Department of
19  Labor has set out, and we will have an individual defense for
20  each person.  There is no common answer, as the Court pointed
21  out in Dukes.
22          So given the fact that we believe that it is virtually
23  impossible that a class would ever be certified in this case,
24  we would ask that you entertain our motion to strike after
25  whatever limited discovery is necessary in order for the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5

C64WglaC
1   plaintiffs to be prepared to respond to that.
2            THE COURT:  All right.  I can't prevent you from
3   filing such a motion, but I really think that your time and
4   effort could be better spent on other things.
5            Let me hear from the plaintiff for a moment.
6            MS. WAGONER:  Your Honor, we agree that this motion is
7   premature, and in our view what's really going on here is the
8   defendants have no defense on the merits and are trying to
9   throw out procedural hurdles to basically prolong the final
10  resolution of the issues in this case, and what we've got here
11  is a situation where the statute of limitations has not tolled
12  on the FLSA claims of the FLSA collective until they have an
13  opportunity to opt in.  We need additional discovery to be able
14  to file our motion for additional certification, and this
15  motion is going to delay that.  We have a discovery schedule in
16  this case that sets the end of discovery just a month from now.
17  At that point, we'll be able to file our motion for class
18  certification and collective certification, and we think that
19  the appropriate time for defendants to make these arguments is
20  in opposition to our contemplated motions.
21           Just to address briefly the point Ms. Bloom made about
22  certifying a class, it is absolutely not the case that the DOL
23  6.10 or the suffer permit standard here would go against
24  certifying a class at all.  The standard is suffer or permit to
25  work.  There is no individualized inquiry really at all.  It's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C64WglaC

1  just did defendant receive a benefit from the labor of these
2  interns.  And it just makes no sense at all to have a motion
3  like this filed at this stage.
4              THE COURT:  Thank you.
5              MS. BLOOM:  Your Honor, just to pick up on what
6  Ms. Wagoner said, we understand that they're going to want to
7  proceed with their 30(b)(6) deposition and that there may be
8  other discovery that they believe they need in order to file
9  their motion for notice, and we don't object to that.  Our
10  point is that we would like to have whatever discovery is done
11  from this point going forward be limited to that which is
12  necessary in order for them to make their motion for notice and
13  in order for them to make their Rule 23 motion.
14             THE COURT:  But they're going to make their motion in
15  July.  Right?
16             MS. WAGONER:  That's right, your Honor.
17             THE COURT:  Right, Ms. Bloom?
18             MS. BLOOM:  I understand that, but the scope of
19  discovery that they've asked for at this point, and I'm
20  prepared to go through what we've already provided and the
21  parties have been diligent in terms of discovery.  Obviously we
22  completed the plaintiffs' depositions.  We turned over to them
23  a lot of discovery, but there is a lot more that they've asked
24  for that would go well beyond what would be necessary for a
25  motion for notice and a class certification motion, and the

7

C64WglaC
```
 1   whole purpose for having Court involvement in that process is
 2   so that a defendant is not subjected to broad and very
 3   expensive discovery if a case is not ultimately going to
 4   certified.  So all that we're asking for is for you to at least
 5   narrow the scope of what takes place between now and July 20,
 6   and then if and when you determine that it can proceed as a
 7   collective and/or class action, then obviously we would go to
 8   the next phase.
 9            THE COURT:  All right.  I'll fix a schedule.  I'm not
10   going to stay discovery in the case.
11            When do you want to file this very exciting motion,
12   Ms. Bloom?  Tell me when.  I can't give you any more signals
13   than I've given you, but if you want to pursue it, my job is to
14   try to hold down the costs of litigating a case, and I just
15   don't see the point when the plaintiffs have to move in July of
16   standing here on June 4 to tell me you want to make this
17   motion, and they're going to say but discovery isn't complete,
18   and they're right.  Discovery isn't complete.
19            MS. BLOOM:  Your Honor, given your comments, I'm going
20   to wait for their motion on July 20.
21            THE COURT:  Now we're making progress.
22            I want to hear briefly on these arguments relating to
23   the discovery issues, and I will tell you right now that
24   they're pretty complicated and I'm going to try to issue an
25   order resolving them within about a week's time.  So, let's
```

8

C64WglaC

1    turn to the questions relating to the discovery disputes.  Let
2    me begin, I guess, with Ms. Wagoner and Mr. Klein.
3              Don't the interns have a legitimate privacy interest
4    that's threatened if you contact them prior to conditional
5    certification?
6              MS. WAGONER:  Your Honor, courts have addressed this
7    argument in the exact same context of Fair Labor Standards Act,
8    contacts prenotice, and have found that whatever privacy
9    interest there may be is outweighed by the need to obtain
10   discovery from witnesses in order to obtain conditional
11   certification and get notice out to the class.  And the way
12   that they're going to be contacted is already protected by the
13   ethical rules, which is a sufficient safeguard in this case for
14   any contacts that there may be.  It's certainly not,
15   defendant's letter suggested some kind of impropriety that
16   there absolutely would not be, and courts have addressed this
17   argument.
18             THE COURT:  How is discovery of corporate interns'
19   contact information relevant if many of those interns received
20   academic credit for their work?
21             MS. WAGONER:  Academic credit really has no bearing at
22   all on whether or not they were suffered or permitted to work
23   and whether or not they were employees.  There is nothing in
24   law that says that academic credit has any bearing on the
25   standard under the Fair Labor Standards Act.  In our view, that

9

C64WglaC

1  really has nothing to do with whether or not they are witnesses
2  in this case who have information about the duties that they
3  performed, the benefit that they provided to Fox, Fox's
4  involvement in their supervision, and all the other factors
5  that are relevant to the six-point test and whether or not they
6  were suffered or permitted to work.  I wouldn't want there to
7  be any confusion on that point.  There's no law on academic
8  credit.
9              THE COURT:  Can you tell me what PFD agreements are?
10             MS. WAGONER:  My understanding is that a PFD
11  agreement, a production finance distribution agreement, is the
12  contract that Fox Searchlight enters into with the shell
13  company that is created to produce a film that lays out the
14  production agreement, basically.
15             One sample agreement was attached to one of our
16  letters, to our June 1 letter.  It does not contain budget
17  information and it contains limited information about the terms
18  and conditions of employment of the people who are working on
19  the film.  So it certainly is relevant to our claims.  It is
20  not enough to determine, and I assume you're asking about it
21  because we want information about budgets and HR policies from
22  Fox, and PFD agreements touch on those issues but do not
23  contain the level of detail that we need to show Fox's control
24  over employees' terms and conditions.
25             THE COURT:  How would additional budget information
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

C64WglaC

```
 1   show Fox's control?
 2          MS. WAGONER:  The budgets contain line items about
 3   every worker who was making the movie.  So even low-level
 4   workers, like production assistants, who performed the same
 5   kind of work that interns performed on films, there's going to
 6   be a line item in that budget.  And so it's relevant for two
 7   reasons.
 8          First, to the extent Fox has the ability to sort of
 9   approve or modify or decide on what even low-level employees'
10   wages are going to be, that shows Fox's control over terms and
11   conditions of employees working on the films, which would
12   suggest that they have that same control over interns who
13   aren't paid but are still performing those same duties.
14          Second, to the extent that the film is underfunded for
15   that kind of low-level work, that goes to the benefit that Fox
16   received from the interns' labor because, for example, say a
17   film needs five production assistants to do various types of
18   low-level work, one film only has two budgeted that shows that
19   interns were filling that gap.
20          THE COURT:  All right.  I'm going to put the same
21   question to Ms. Bloom.  But why can't you folks work out the
22   situs of a deposition?
23          MS. WAGONER:  We believe it should take place in New
24   York.  We believe the law supports that.  We filed the case in
25   New York.  We have New York State labor law claims in this
```

11

C64WglaC

1    case.  It would be enormously costly and inconvenient to take
2    the depositions in Los Angeles, and it seems uncontroversial to
3    us that the deposition should take place here.
4            THE COURT:  Except for the fact that there's a
5    presumption that a witness should be deposed in the district
6    where they work and reside.
7            MS. WAGONER:  The presumption exists but can be
8    overcome when there are cost concerns and inconvenience
9    concerns, and we think those are present here.  My firm does
10   not have local counsel in California, which would make it very
11   difficult for us to take a deposition in California.  It's
12   expensive to go to California.  It would require a day of
13   travel both ways for all counsel, and we think that those
14   considerations outweigh the presumption.
15           THE COURT:  All right.  Let me hear from your
16   adversary.
17           MS. BLOOM:  You want me to start with that?
18           THE COURT:  Why don't you start with that.  It makes
19   my hair hurt when I see parties disputing the situs of a
20   deposition.  I mean, in the end, wouldn't it be cheaper all
21   around to just bring the witness to your office in New York,
22   Ms. Bloom?
23           MS. BLOOM:  It's not just one witness.  These are
24   30(b)(6) depositions, and it's going to be at least two
25   witnesses.  They're people who hold high-level positions within

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C64WglaC
```
 1   the company.  My in-house counsel is also in California.  We
 2   have offered them --
 3             THE COURT:  I bet they come to New York pretty
 4   frequently.
 5             MS. BLOOM:  Not these two people.  These two people
 6   don't.
 7             This is brought as a class action.  I've offered them
 8   the opportunity do it by video teleconference.  I've told them
 9   that we'll make a conference room available to them, an extra
10   conference room, an office.  They can ship their boxes,
11   whatever they need to make it easier for them, absent bringing
12   these two people to New York we're prepared to do.
13             I think the law, especially when you bring a class
14   action, we're talking about one, possibly a day and a half of
15   deposition.  I don't know how long they think the 30(b)(6) will
16   take, but we're not talking about eight or nine depositions.
17   We're talking about one trip and we're talking about the
18   depositions of two corporate people who have jobs besides this
19   lawsuit.
20             THE COURT:  Look, you cite cases from the Eastern
21   District where courts deny precertification requests for
22   contact information, but don't my colleagues here in the
23   Southern District permit such discovery?
24             MS. BLOOM:  Your colleagues do, but there is a
25   difference, and there is a difference in this case.  The
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C64WglaC

1   plaintiffs have said that what they need this contact
2   information for is because they need to talk to witnesses so
3   they can get information about their investigation.  I think
4   it's important for you to know that in terms of contact
5   information for the production of Black Swan that their two
6   clients were interns on, they have the same contact information
7   that we have.
8           With regard to the information for the other films,
9   they have first name, last name, and any business information
10  that we had for anybody that worked on those films.  To the
11  extent that we had any personal information for the people on
12  those films, we have not given them that information.
13          For the corporate interns, we have given them and then
14  offered to give some additional information, the first names,
15  the dates, the departments, and we've offered to give the
16  supervisors and offered to tell them whether the supervisors
17  are current or former employees.  We believe that they have
18  more than enough in terms of being able to contact potential
19  witnesses with relevant information.
20          Further evidence of that is the fact that from what
21  we've given them, they've been able to contact people, and
22  we've provided you an example of an intern that from the
23  information we gave they were able to do some search on
24  LinkedIn and get in this person's LinkedIn account and send an
25  e-mail to this person, asking this person to contact them.  So

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

C64WglaC

1   it seems to me that the facts demonstrate that they have more
2   than sufficient information about people with potentially
3   relevant information and understanding that we view relevant
4   information differently, but there is certainly no dispute
5   about the fact that they have it all for Black Swan and they
6   certainly have enough to get in contact with other interns
7   because, in fact, they have.
8              As to the communications, and, as I said, I gave you
9   one example, in getting in contact with these people, they are
10  making a representation that the communications are
11  confidential, and it's our position that to the extent these
12  people are witnesses and not their clients that the substance
13  of those conversations would not be confidential and that that
14  is not a representation that should be made.
15             The last thing that I would sort of say on this issue
16  is I don't know if you saw the article by the former intern of
17  The Observer magazine, and I brought a copy for the Court if
18  you didn't get to see it, and while that individual was not an
19  intern on Fox, he talks about his conversations with the Outten
20  & Golden law firm about the potential of them representing him
21  in a lawsuit, which he's declined to do, against The Observer.
22  But if you put all those facts together, we believe that they
23  have well beyond sufficient information to contact people with
24  relevant information and that to provide them with any further
25  names and addresses beyond what we've already given them is not

C64WglaC

```
 1   justified by the facts in this case.
 2             THE COURT:  Why would it burden Searchlight to turn
 3   over the other interns' contact information, their cell phone
 4   numbers and their e-mail addresses?
 5             MS. BLOOM:  First of all, it is a time-consuming
 6   process, and, second of all, we believe that their objective in
 7   asking for that information is not because they're looking for
 8   people with relevant information.  It's a fishing expedition to
 9   try to get additional information to support their claims in
10   this case.  I mean, especially having taken the plaintiffs'
11   depositions, and just so we're all on the same page, neither of
12   the two named plaintiffs got school credit for their
13   internship.  So to the extent that they're advancing the fact
14   that the school credit issue is a seminal issue in this case as
15   it relates to the corporate interns, neither of their two named
16   plaintiffs would be an adequate class representative for that
17   group.  So we believe that it's a balancing test, that the
18   Court has discretion about whether or not to order the further
19   disclosure of additional names and addresses and that the facts
20   in this case don't warrant it.
21             The only other thing I would say is that the Sperling
22   case, the LaRoche case that I know gets cited a lot, one
23   important distinction that sometimes gets missed when people
24   cite the Sperling case as the basis for discovery of names and
25   addresses of putative class members is that in the Sperling
```

C64WglaC
1  case there had already been a showing that those additional 200
2  people were similarly situated to the other, I think, 400 who
3  were in the case.  We're not there yet.  We're not at that
4  similarly-situated point.  So if and when we ever get to that
5  point, I understand that the issue of a class list would be
6  relevant, but we are far from that point.
7              The last thing I would point out is that this issue
8  was raised again in the Hearst case and that Judge Baer did not
9  order the turning over of names and addresses of interns at the
10 class certification stage.
11             THE COURT:  Couldn't payroll and budget information
12 show the extent of Searchlight's control over the production
13 companies and their interns?
14             MS. BLOOM:  We don't believe that additional
15 information beyond what we gave will go to the control factor.
16 Fox Searchlight's relationship with each of these production
17 companies is governed by the agreement of which you've been
18 provided a sample.
19             We also have agreed to give any policies that would
20 have been generated from Fox that would apply to interns that
21 are providing services for the production companies.  What
22 they're asking for are things like drafts of budgets or line
23 item budgets, and that may go to how a particular production
24 company staffed their production, but it doesn't go to whether
25 or not there's a joint employer relationship and whether or not

C64WglaC

```
 1    Fox actually exercised control over any particular intern who
 2    may have been providing services on a particular production.
 3    We believe they have more than enough information to at least
 4    address the joint employer question, and again, that's one of
 5    the things that is going to be explored through a 30(b)(6), and
 6    the PDF agreements, plus the policy and plus some of the ESI
 7    searches, we believe, gives them more than adequate information
 8    and that they don't need additional budget information and that
 9    it will not shed any more light on whether or not and, if so,
10    to what extent a joint employment relationship existed between
11    Fox and any intern on any production.
12              THE COURT:  But whether the plaintiffs have, as you've
13    characterized it, enough information isn't the test, is it, for
14    what's discoverable?
15              MS. BLOOM:  We don't believe that the day-to-day
16    budget information is going to be probative of the question of
17    whether or not somebody from Fox Searchlight controlled the
18    day-to-day duties and responsibilities of an intern who was
19    providing services on a particular film.  I don't want to
20    misstate my recollection of the case law, but I don't believe
21    that budget concerns is an indicia of the joint employment
22    relationship.
23              THE COURT:  Thank you.
24              Mr. Klein, did you want to be heard?
25              MR. KLEIN:  Yes, your Honor.  Just very briefly.  In
```

C64WglaC
1   response to The Observer article, if I may respond to it.
2             THE COURT:  By the way, I'll take a copy of it.
3             MR. KLEIN:  Just very briefly.
4             THE COURT:  Out of curiosity.
5             MR. KLEIN:  More for comic relief than for any other
6   value.
7             THE COURT:  I can always use that.
8             MR. KLEIN:  A very young reporter came and said, I'm a
9   reporter for The Observer, and they're not paying me for any
10  wages.  And I said, That's terrible, you should get paid for
11  your work, and he wrote an article.
12            In terms of the contact list information, a common
13  tactic, perhaps they won't do it here, but a common tactic in
14  response to a class action or a cause of action certification
15  motion are what we call happy camper declarations.  These are
16  declarations by absent class members submitted by the defendant
17  in opposition to collective or class action certification.
18  They have access to their contact list.  They make use of it,
19  routinely, this firm Proskauer does.
20            In fact, in the case Gristede's case, this same firm,
21  Proskauer, submitted affidavits from our absent class members,
22  none of whom spoke English as a first language.  Nonetheless,
23  they produced affidavits in opposition in that litigation.
24  It's a common tactic.  So it's a sword-and-shield problem.
25            One other very small point.  They cite the Dukes in
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

C64WglaC

1   support of the idea of certifying a class action.  Ironically
2   enough, and Judge Francis just observed this in the Chen-Oster
3   v. Goldman Sachs, that Dukes provides for additional discovery
4   because it heightened the bar in terms of the requirements for
5   certifying a class action.  The merits matter.  Dukes follows
6   the IPO decision out of the Second Circuit enhancing or raising
7   the bar in terms of what evidence needs to be submitted to the
8   court in support of a class certification.  A higher standard
9   means more discovery.  So the idea that somehow Dukes supports
10  the idea that there should be a limitation on discovery runs
11  directly counter to the holding of Dukes and also IPO.
12          THE COURT:  Counsel, thank you for your presentations.
13  I'm reserving decision.  I expect to issue an order resolving
14  these disputes early next week.  All right?  Thanks.
15          (Proceedings adjourned)
16
17
18
19
20
21
22
23
24
25