IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

XUEDAN WANG, on behalf of herself and all
others similarly situated,

                                Plaintiff,

v.

THE HEARST CORPORATION,

                                Defendant.

**ECF**

12-cv-00793 (HB)(AJP)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO STRIKE THE CLASS AND COLLECTIVE ACTION ALLEGATIONS AND
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-AUTHORIZED NOTICE
PURSUANT TO SECTION 216(b)**

**HEARST CORPORATION**

Office of General Counsel
Eve B. Burton
Jonathan R. Donnellan
Kristina E. Findikyan
Shari M. Goldsmith
Courtenay B. O'Connor
300 W. 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 841-7000
Fax: (212) 554-7000

*Attorneys for Defendant Hearst Corporation*

Of Counsel:

Proskauer Rose LLP
Mark W. Batten
One International Place
Boston, MA  02110-2600
Tel: (617) 526-9850
Fax: (617) 526-9899

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................1

I.     PLAINTIFF CONCEDED THROUGH A FAILURE TO RESPOND THAT
HER FLSA CLAIM CANNOT BE CERTIFIED IF THE COURT DOES NOT
ADOPT HER EXTREME ARGUMENT THAT INTERNSHIPS ARE ILLEGAL
IF A CORPORATE HOST OBTAINS ANY BENEFIT AT ALL, AN ARGUMENT
THAT HAS NO GROUNDING IN LAW, POLICY OR COMMON SENSE ..................3

II.    PLAINTIFF'S PROPOSED STATE LAW CLASS CANNOT BE CERTIFIED .............8

III.   WANG CANNOT REPRESENT THE PROPOSED CLASS ........................................9

IV.   THE "DEDUCTIONS" CLASS SHOULD BE STRICKEN ..........................................10

V.    PLAINTIFF'S OWN MOTION FOR CONDITIONAL CERTIFICATION MAKES
CLEAR THAT CLASS ISSUES ARE PROPERLY DECIDED NOW ..........................10

CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

**CASES:**                                                                **Page**

*Archie v. Grand Cent. P'ship, Inc.*,
   997 F. Supp. 504 (S.D.N.Y. 1998) ................................................................. 4-6

*Christensen v. Harris Cnty*,
   529 U.S. 576 (2000) ...................................................................................6

*Diaz v. Electronics Boutique of Am., Inc.*,
   No. 04-cv-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ................................8

*Donovan v. New Floridian Hotel, Inc.*,
   676 F.2d 468 (11th Cir. 1982) ..........................................................................4n

*Kasalo v. Harris & Harris, Ltd.*,
   656 F.3d 557 (7th Cir. 2011) ...........................................................................10

*Mike v. Safeco Ins. Co. of Am.*,
   274 F. Supp. 2d 216 (D. Conn. 2003) ................................................................8

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011) ........................................3

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...........................................................................10

*Solis v. Laurelbrook Sanitarium and School, Inc.*,
   642 F.3d 518 (6th Cir. 2011) ...........................................................................4n

*Summa v. Hofstra Univ.*,
   715 F. Supp. 2d 378 (E.D.N.Y. 2010) ................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..................................................................................8

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947) ......................................................................................4

*Wirtz v. Wardlaw*,
   339 F.2d 785 (4th Cir. 1964) ...........................................................................4n

**OTHER AUTHORITIES:**

U.S. Dep't of Labor, Wage and Hour Div. Fact Sheet #71, *Internship Programs
      Under the Fair Labor Standards Acts* (April 2010)
      (available at http://www.dol.gov/whd/regs/compliance/whdfs71.htm) ........................... 4-7

## INTRODUCTION

Plaintiff's class theory boils down to an effort to persuade this Court to read the law in a novel and rigid way, as no other court has read it, so that any meaningful unpaid internship (*i.e.*, where the intern actually gets hands-on experience doing something productive) would be *per se* illegal under the FLSA.  Plaintiff's extreme view of the law is her only hope for certification. That is because discovery has confirmed that plaintiff's class allegations of an illegal corporate policy are baseless.  As set forth in Hearst's motion to strike, the *only* corporate policy governing its magazines' unpaid interns is the requirement that they be students who earn academic credit for their semester-long internship.  No amount of discovery can change this fact, as plaintiff now seems to recognize by her cross-motion for conditional certification.  Characterizations aside, the material facts are not in dispute.  It is undisputed that interns at the different magazines do a wide variety of different things.  (Opp. at 5-8)  And while plaintiff tries to suggest broad corporate control over the internship programs by citing HR's enforcement of the credit requirement and its efforts to assist the magazines with screening and recruitment (Opp. at 2-4), the record does not bear it out.[1]  In fact, plaintiff's own declarations confirm that the interviewing, selection, training and supervision of interns are all done at the magazine level.  (*See* Bien Decl., Exs. U-Y)[2]  Indeed, plaintiff herself argues that Hearst did nothing at the corporate level to ensure the

---

[1]  After full and probing depositions, the facts are clear that HR's involvement is limited to: (1) collecting intern letters of academic credit, which are then used by building security to ensure they are appropriately issuing building ID passes (*See* Declaration of Shari M. Goldsmith, dated June 18, 2012, Ex. 1 at 81:22-24); (2) assisting a magazine that has asked for help by posting the magazine's internship description to the web (*id.* at 104:20-105:24); and (3) maintaining a general email account where applicants can send their resumes before HR forwards them on to the intern applicant's requested magazine internship program (*id.* at 149:15-25).  There simply is no corporate or centralized control of any magazine internship program at Hearst.  (*Id.* at 97:21-24) ("There is no 'across the company.'  There's no centralized program of any sort, so what happens at one magazine doesn't necessarily happen at the other magazine.").  The HR deponents' sworn testimony makes clear that they have no knowledge of how unpaid interns are selected (*Id.*, Ex. 2 at 127:1-13; *id.*, Ex. 1 at 114:5-11), what those interns do or do not do (*id.*, Ex. 2 at 176:6-9; 178:24-180:1; 183:8-186:22; *id.*, Ex. 1 at 139:23-145:10), only superficial knowledge of one magazine's (Cosmopolitan) training program (*id.*, Ex. 2 at 176:10-178:23), and no knowledge of any other aspect of magazine internships.

[2]  "Bien Decl." refers to the Declaration of Rachel Bien, dated June 7, 2012, filed with plaintiff's opposition papers.

magazine intern programs complied with the law (Opp. at 8), and with no centralized compliance efforts, the Court can only look to each magazine and each intern to determine whether the internship lawfully was unpaid.  Plaintiff's declarations also confirm that interns did in fact receive training and supervision, though the amount and degree of satisfaction with each differs among interns, raising individual questions as to the degree of benefit they received.  (*See* Bien Decl., Exs. U-Y)  And they confirm that most interns were part-time, and that all interns had no expectation of employment or pay.  (*Id*.)[3]  In short, the only facts consistent across magazines do not support plaintiff's case, much less certification.

Having struck out with the theory of a centralized program governed by an illegal corporate policy, plaintiff shifts focus to the legal standard governing liability, attempting to reform the law to fit the facts so as to *make* Hearst's programs facially illegal.  Under plaintiff's version of the law, every unpaid internship is illegal if the intern did a single thing that benefited the company or was productive.  (*See* Opp. at 11-14)  This "benefit equals illegal" argument has the virtue (from plaintiff's perspective) of reforming the law to make individual differences among class members irrelevant.  However, there is no case law to support this novel theory, and its adoption by this Court would have the effect of outlawing all unpaid internships, holding them *per se* illegal if an intern did anything other than passively observe or engage in simulated tasks unconnected with the actual operations of the place where they intern.  Revealing of the extreme decision necessary to keep her class allegations alive, plaintiff does not even argue that a

---

[3]  The declarations also make plain that a trial in this case would be unwieldy, requiring detailed examination and cross-examination of each intern's experience.  For instance, the named plaintiff in this case now claims that she did not receive "meaningful" training or supervision.  (Bien Decl., Ex. W ¶¶ 7-9, 19-21)  Previously, however, Wang wrote that her internship had been "the most unique and valuable professional experience [she] could have asked for" and "provided [her with] unrivaled skills for working in fashion."  (Declaration of Kristina Findikyan, dated April 4, 2012 ("Findikyan Decl."), Ex. 36, Ex. A; *id.*, Ex. 35, Ex. A)  And Wang's supervisor, Sam Broekema, has attested that she was closely supervised and received extensive one-on-one training.  (*Id*., Ex. 15 at ¶¶ 8, 12-14)

class could be certified under any other legal standard – such as a primary beneficiary or economic benefit analysis.  This is because any other standard would require individualized inquiries unsuitable for class treatment.

The bottom line is that, if there ever can be a certifiable class of unpaid interns, it is not in this case.  With nineteen magazines autonomously operating dozens of programs, this is a far cry from one company using one internship program and requiring the interns to serve one purpose that primarily benefits the company.[4]  There is no basis in law or fact for certification here, and no further discovery can change this.  The class and collective allegations should be stricken.

I.  **PLAINTIFF CONCEDED THROUGH A FAILURE TO RESPOND THAT HER FLSA CLAIM CANNOT BE CERTIFIED IF THE COURT DOES NOT ADOPT HER EXTREME ARGUMENT THAT INTERNSHIPS ARE ILLEGAL IF A CORPORATE HOST OBTAINS ANY BENEFIT AT ALL, AN ARGUMENT THAT HAS NO GROUNDING IN LAW, POLICY OR COMMON SENSE**

Conditional certification under the FLSA requires a showing that potential plaintiffs are similarly situated, which means that they were victims of a common policy or plan that violated the law.  *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011).  To meet this standard, plaintiff asserts that Hearst has a policy of having unpaid interns who are required to receive college credit and that this policy is made unlawful because the interns all do something to benefit Hearst in one way or another over the course of their internships.  (Opp. at 11-13, 15-17)  This theory necessarily requires the Court to hold that any unpaid intern is an employee under the FLSA if she provides any benefit at all to the host company, no matter how minor and even if outweighed by the benefit received by the intern.  No

---

[4]  Wishing that were the situation here, plaintiff makes the misleading statement that Hearst relies on unpaid interns to save money.  (Opp. at 9)  Lacking real support for this provocative statement, plaintiff devotes a single sentence to it and bases it on a single email from a single magazine editorial department in 2008, distorting the content and context of that email.  The email contained a list of measures the magazine should take to cut costs, all unrelated to interns.  One of those measures was to decrease the use of messengers by asking vendors to deliver and pick up the products they loan to the magazine.  The email then said that, in the "rare occurrence" when it is not possible to use vendors, interns could be used for messengering in Manhattan.  (Bien Decl., Ex. EE)

court has ever adopted such a stark standard in reviewing whether persons are employees covered by the FLSA.

Plaintiff cites to *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), *Archie v. Grand Central Partnership, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998), and DOL Fact Sheet #71, though none supports her extreme view of the law.  (Opp. at 11-14)[5]  *Walling* specifically states that Congress did not intend for the FLSA to cover those who "worked in activities carried on" for the "profit" of "other persons" where there is no expectation or promise of compensation and the worker does so "solely for his personal purpose or pleasure."  330 U.S. at 152.  *Walling* thus directly contradicts plaintiff's claim that the performance of unpaid work beneficial to another alone makes the worker an "employee" under the FLSA.  To the contrary, *Walling* expressly held that one must look to the subjective motivation of the person performing the work – whether he or she is doing it "solely for his personal purpose or pleasure" or "for their own advantage" – and also to the person's expectation of compensation.  *Id.*  Those are the dispositive factors, not whether another benefited.  To be sure, in *Walling*, the trainees did in fact "do actual work" yet were held not to be employees.  *Id.* at 149.

The *Walling* Court also made clear that the FLSA was not intended to cover persons who "have so little experience in particular vocations that they are unable to get and hold jobs at standard wages," otherwise it "might deprive them of all opportunity to secure work, thereby defeating one of the [FLSA]'s purposes, which was to increase opportunities for gainful employment."  *Id.* at 151.   This guiding policy principle is particularly instructive here, where

---

[5] Plaintiff also relies on two aging cases, *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982), and the nearly fifty-year-old decision in *Wirtz v. Wardlaw*, 339 F.2d 785 (4th Cir. 1964).  Neither case involved interns, neither discusses the six-factor test, and neither devotes more than two sentences to the employee-status question at issue in this case.  Indeed, *Wirtz*'s brief discussion implicitly balances the benefits gained by the individuals and the employer, 339 F.2d at 788, as the Sixth Circuit recognized in *Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518, 528 (6th Cir. 2011).

the interns in question are inexperienced college students seeking exposure to the highly competitive publishing industry so as to increase their opportunities for gainful employment after graduation. The likely consequence of adopting plaintiff's black-and-white test would be the end of many intern programs and the opportunities they provide: employers would fear liability stemming from internships that might be construed as productive and students would see little value in unpaid programs that precluded them from gaining real skills and experience through real work. This is not what the FLSA was enacted to do, particularly where, as here, more than one hundred colleges have determined the internships worthy of academic credit. (Findikyan Decl., Ex. 35 ¶ 4)

*Archie* similarly reflects that the legal standard for determining employee status under the FLSA is not so rigid and clear-cut as to bar any unpaid relationships where the company benefits. The *Archie* opinion is thirty pages long, much of it devoted to analyzing whether the plaintiffs could be considered employees in the context of the situation in which they worked. Significantly, the court viewed the six factors from DOL Fact Sheet #71 as "not exhaustive," it analyzed only five of those factors, and it concluded that the DOL "test" is itself but "a factor to be weighed in the analysis." *Archie*, 997 F. Supp. at 532-33. The court then went on to analyze the economic reality of the relationship, finding that plaintiffs participated in the program "because they thought it was a job" and expected compensation. *Id*. at 533. In the end, the court found that "the economic reality is that [the plaintiffs] benefited from the defendants' efforts, but the defendants benefitted more," and, accordingly, the plaintiffs were covered by the FLSA. *Id*. at 535; *see also id*. at 533 ("[E]ven though [plaintiffs] received a benefit, the defendants gained an immediate and greater advantage …."). This balancing of benefits is consistent with the "primary beneficiary" approach applied by the majority of circuit courts. (Hearst Br. at 14-16)

Plaintiff's cite to DOL Fact Sheet #71 in support of her wooden "benefit equals illegal" test (Opp. at 13) is also unpersuasive for several reasons.  First, by its own terms, the DOL Fact Sheet is not a rule or even an official statement and is not to be given the same weight as regulations.  (Findikyan Decl., Ex. 40) ("This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.") Supreme Court precedent also establishes as a matter of law that DOL Fact Sheets are not entitled to judicial deference.  *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).  This is particularly true here, where the Fact Sheet is based on DOL's reading of a judicial decision. Second, there is not a single court of which we are aware that has required every DOL factor to be met, much less held that *any* productive work translates into employee status.  Rather, courts consider the totality of the circumstances and/or "economic realities" to determine who receives the primary benefit, as evidenced by *Archie* (which analyzed only some of the DOL factors). (*See also* Hearst Br. at 14-16)  Third, even the DOL has not applied the Fact Sheet in the inflexible manner that plaintiff proposes.  DOL opinion letters reflect that it considers the totality of the circumstances in practice and does not regard the performance of productive work alone as creating an employment relationship.  *See* Findikyan Decl., Ex. 42 (opinion letter noting legality of student internships "where certain work activities are performed"); *id.*, Ex. 43 (same).  Rather, DOL has required detailed factual information, often concluding that it cannot decide based on the facts provided to it if an employment relationship exists.  For instance, in one opinion letter, the DOL was "unable to ascertain whether the [interns'] *productive work*" was offset by burdens to the employer, and stated that "[i]f, in fact, this internship program is predominately for the benefit of the college students, [it] would not assert an employment relationship."  (*Id.*, Ex. 45

(emphasis added); *see also id.*, Ex. 38 (based on 31 years experience as DOL official, as a matter of practice the DOL looks to whom the "predominant benefit" accrued in assessing internships)).

On her cross-motion, plaintiff cites a single additional case in an attempt to meet her burden for conditional certification.  (Opp. at 15-18)  The only similarity between that case, *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378 (E.D.N.Y. 2010), and this one is that the plaintiffs in *Summa* were students.  The similarity ends there.  In fact, the purported class of undergraduate and graduate assistants working at Hofstra *expressly excluded student interns*, who "would clearly be excluded from the FLSA," and the assistants did *not* receive academic credit for their work.  *Id.* at 389.  Rather, the assistants were paid and Hofstra had two official "student employment" handbooks setting forth the school's policy guaranteeing that assistants would be paid the legal minimum wage for all hours worked.  *Id.* at 386-87.  Not surprisingly, the *Summa* court gave short shrift to Hofstra's argument that assistants need not be paid given its clear written admissions that assistants were entitled to minimum wage under the FLSA.  The court did not analyze the legal standard that should be applied to determine whether interns or trainees are employees under the FLSA.  Instead the court simply noted that Hofstra had asserted that the DOL six-factor test was applicable but had not satisfied it.  *Id.* at 389-90.  *Summa* lends no support to the theory that Hearst has an unlawful policy warranting conditional certification.

Plaintiff has no response to the "primary beneficiary" and related balancing approaches other than to say they are wrong and not applicable (*see* Opp. at 12-13).  Plaintiff conspicuously does not argue that conditional certification could be granted if the "primary beneficiary" standard – or any standard other than plaintiff's "benefit equals illegal" test – were applied.  This is because any other standard for determining the legality of unpaid internships requires an individualized inquiry as to each intern and internship.  Plaintiff's failure to argue that any such

inquiry can be conducted on a class-wide basis means that, unless the Court accepts her "benefit equals illegal" argument, Hearst's motion to strike should be granted.

Plaintiff cannot escape that the legality of the unpaid internships challenged here can only be determined on a case by case basis.  Certification is properly denied at this early stage because plaintiff's claim is framed such that the central question in determining liability will be "extremely individual and fact-intensive."  *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003)  (denying conditional certification because "[t]he nature of [the plaintiff's] claim necessarily precludes proceeding on a collective basis"); *Diaz v. Electronics Boutique of Am., Inc.*, No. 04-cv-0840E(SR), 2005 WL 2654270, at *5 n.8 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification because "significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims").[6]

## II.    PLAINTIFF'S PROPOSED STATE LAW CLASS CANNOT BE CERTIFIED

Plaintiff's state class allegations hinge on the same "benefit equals illegal" theory (Opp. at 21-23), which fails for the reasons above.  Applying a primary beneficiary or related analysis, there are no common answers to the question whether interns were unlawfully denied wages, and certainly no capacity to determine the validity of each claim "in one stroke."  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Furthermore, the only predominating common elements in this case weigh against liability, such as the receipt of college credit, an understanding in advance that the internship would be unpaid, and, typically, part-time hours.

---

[6] Even if plaintiff were to meet her burden at the initial certification stage (which she cannot), she will not survive the more stringent, second-step FLSA certification inquiry.  Plaintiff misconstrues Hearst's argument of second-step futility (Opp. at 18-19; Hearst Br. at 16-19), but in the process further confirms that any continued litigation here would be a fishing expedition.  No amount of additional opt-ins or discovery will change the essential fact that a single trial would be unmanageable given the lack of any unlawful corporate policy, the existence of dozens of different internship programs and the thousands of interns who have served in them.

Grasping, plaintiff puts forth four questions that do not rest on the productive tasks interns may have performed.  (Opp. at 23)  First, whether interns are subject to the same policy under which they are classified as non-employees and not paid.  (*Id.* at 22)  The answer to this is "yes," but it has no bearing on whether any unpaid internship is lawful.  Second, whether the school credit requirement constitutes an unlawful deduction.  (*Id.*)  This is a pure legal question, the answer to which is "no" and so fails to support certification.  (*See* Hearst Br. at 24-25)  Third, whether the school credit requirement makes the unpaid internships lawful.  (Opp. at 23)  This does not support certification: if the answer is "yes," there is no liability, and if the answer is "no," an individual inquiry must be performed to determine whether each intern was properly unpaid.  Finally, whether "Hearst's violations of the law were willful."  (*Id.*)  This question presupposes liability; certification must be based on a common question with a common answer that could result in liability.  The class allegations should be stricken.

Even if these supposed common questions satisfied Rule 23(a)'s commonality requirement, and they do not, the proposed class still would fail the predominance and superiority requirements of Rule 23(b)(3).  Trial of this case would not center on the issues plaintiff identifies, all of which are either undisputed or irrelevant to class certification; trial would concern the balance of benefits between each intern and Hearst, and those thousands of individualized mini-trials would engulf whatever commonality there is in questions about school credit and the like.  This case could never be tried on a class basis, and no class can be certified.

## III.   WANG CANNOT REPRESENT THE PROPOSED CLASS

Plaintiff all but admits that she is atypical.  Wang's own declaration confirms that she interned full-time, more than forty hours a week, and did not get academic credit for her

internship.  Plaintiff seeks to add a new class representative because she did not pay for school credits.[7]  (Opp. at 25)  It is clear that plaintiff is neither typical nor an adequate representative.

## IV.    THE "DEDUCTIONS" CLASS SHOULD BE STRICKEN

Plaintiff failed to respond to authority establishing that her deductions claim fails as a matter of law.  (Opp. at 25; Hearst Br. at 24-25)  Accordingly, the "deductions" class should be stricken, and the asserted "common" question as to whether the school credit requirement constitutes an unlawful deduction should be disregarded (Opp. at 22).

## V.    PLAINTIFF'S OWN MOTION FOR CONDITIONAL CERTIFICATION MAKES CLEAR THAT CLASS ISSUES ARE PROPERLY DECIDED NOW

Plaintiff's claim that Hearst's motion to strike is "procedurally premature" is belied by her motion to conditionally certify the FLSA claim and her argument that "it is clear" that a state class is certifiable.  (Opp. at 19-21)  Such motions are permitted at early stages precisely for cases like this – where the facts and law make the case unsuitable for class treatment and will not be affected by further discovery.  *See, e.g., Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("[A] court may deny class certification even before the plaintiff files a motion requesting certification. . . . It need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." ); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) ("That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature. . . . The problem for plaintiffs is that we cannot see how discovery or for that matter more time would have helped them.").  The class allegations should be stricken now.

## CONCLUSION

Hearst's motion should be granted and plaintiff's motion should be denied.

---

[7] Plaintiff's request, made through a sentence buried in her brief, is improper and should be denied.

Respectfully submitted,

Dated: June 18, 2012                    **HEARST CORPORATION**

                                        /s/ Jonathan R. Donnellan
Of Counsel:                             Eve B. Burton
Proskauer Rose LLP                      Jonathan R. Donnellan
Mark W. Batten                          Kristina E. Findikyan
                                        Shari M. Goldsmith
                                        Courtenay B. O'Connor

                                        *Attorneys for Defendant Hearst Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record, this 18th day of June, 2012, by operation of the Court's CM/ECF electronic filing system.

/s/ Jonathan R. Donnellan

Jonathan R. Donnellan