IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XUEDAN WANG and ERIN SPENCER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | **ECF**<br>12-cv-00793 (HB)(AJP) |
| v. | |
| THE HEARST CORPORATION, | |
| Defendant. | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
TO RE-OPEN THE NOTICE PERIOD**

Despite extensive press coverage, a social media campaign, website, press release, and individual contacts, just six former interns out of several thousand have elected to join plaintiffs Xuedan Wang and Erin Spencer in their attack on Hearst's popular intern programs.[1] Disappointed with the apparent lack of interest in their appeal, plaintiffs now complain that their opponent should have done more to evangelize their cause. Hearst had no such obligation, and has scrupulously complied with ethical requirements in speaking with the hundreds of former interns who were eager to comment on their positive internship experiences. Plaintiffs do not cite a single case granting the relief they seek in these circumstances.

Apart from its lack of legal merit, plaintiffs' motion also should be denied because the Court has already considered and decided the issues it raises. Plaintiffs have known that Hearst lacked comprehensive class lists since last August, and as a result requested, and the Court

---

[1] Eight others also initially filed consents to join the case. Seven of those then refused to participate at all in discovery, and their claims were dismissed with prejudice. Docket No. 101. The eighth, Jessica Ann Best, participated in discovery but thereafter withdrew her consent, and her claims also have been dismissed with prejudice.

ordered, a variety of alternative methods to reach class members.  The Court also ordered Hearst

to collect contact information for current interns, which Hearst did, and supplied that information

to plaintiffs.  There is nothing new here apart from the unsurprising discovery that Hearst,

starting with the same documents and partial lists produced to the plaintiffs – but without the

benefit of their social media efforts and website – set about to locate witnesses, just as any

litigant might.  Plaintiffs even knew that Hearst was doing that work back in early December,

when Hearst's efforts were reported in the press, but waited until after the close of discovery to

make this request.  Hearst's success in identifying interns who wanted to applaud those programs

rather than attack them does not justify reopening the notice period – and thereby, though

plaintiffs do not acknowledge it, derailing the current certification and trial schedule – to give

them another chance to ferret out unhappy interns.  Their motion should be denied.

<u>**STATEMENT OF RELEVANT FACTS**</u>

      This Court granted conditional certification under the Fair Labor Standards Act, 29

U.S.C. §201, et seq. ("FLSA"), on July 7, 2012.  Docket No. 34.  Hearst set about collecting a

class list, as the Court ordered.  Unlike in most FLSA cases, which involve employees whose

contact information is readily available, here there were no comprehensive lists of intern contact

information.  On August 2, 2012, Hearst re-produced the intern lists it did possess; removed

redactions of identifying and contact information in dozens of other documents (such as resumes

and cover letters); and also produced a spreadsheet in which Hearst had compiled contact

information that had been retained on an ad hoc basis by individual magazines.  *See* Batten Decl.

Ex. A.  After discussions with plaintiffs' counsel, chronicled in Batten Decl. Ex. B, Hearst also

produced lists of interns retrieved from a vendor that provides ID cards for access to the Hearst

building and ID card forms with even more contact information.

### A.      Plaintiffs Seek, And Are Permitted, To Solicit Class Members By Non-Traditional Means.

Because Hearst was unable to provide complete contact information for all interns, plaintiffs wrote to the Court on September 6, 2012, requesting that they be permitted a variety of supplemental methods of publicizing this lawsuit and soliciting interns to join it.  Batten Decl. Ex. C.  Hearst did not oppose the request for alternative methods of solicitation, but merely sought some alterations in the language of the proposed communications.  By Order dated September 27, 2012, the Court approved all of plaintiffs' proposed methods, which included

- ➢ a stand-alone website with a downloadable consent form;

- ➢ a text message to intern cellphones, inviting the interns to visit plaintiffs' website;

- ➢ advertisements on Facebook, LinkedIn, and Google; and

- ➢ a press release.

Docket No. 54.  In the same Order the Court also directed Hearst to begin collecting contact information for interns, *see id.*; Hearst did so, and provided that information to plaintiffs on October 5, a week after the Order, and more on October 12 and 19, 2012.  *See, e.g.*, Batten Decl. Ex. D.  At the same time, plaintiffs were giving repeated interviews to various media outlets, further publicizing the case.[2]

All in all, by October 19, 2012, through lists and produced documents, Hearst had provided plaintiffs with contact information for more than 500 interns (not 328, as plaintiffs

---

[2] *See, e.g.*, "The Norma Rae of Fashion Interns," http://nymag.com/thecut/2012/09/norma-rae-of-fashion-interns.html (September 11, 2012); "Diana Wang, the Intern Muckraker?," http://www.ed2010.com/2012/07/exclusive-ed-interview-diana-wang-intern-muckraker (July 2012). Several declarants testified, in fact, that they first learned of the litigation from the press, not from Hearst. *See, e.g.*, Deposition of Charlotte Miller at 78:23-79:4; Deposition of Marisa Novello 66:20-24 (read about the lawsuit in the New York Times); Deposition of Tara Buchalter at 13:3-6 (same); *see also* Deposition of Katie Riordan at 22:19-21 (she had heard of the lawsuit "through the grapevine.  I have a lot of friends in publishing."); Deposition of Molly Ritterbeck 126:16-24 (had heard of the lawsuit "sometime in early 2012" through "word of mouth").  Deposition excerpts are attached to the Batten Decl. as Exhibit E.

claim, Pl. Brf. at 2).  Plaintiffs also apparently were able to identify and contact interns through

other means, because all but two of the remaining opt-in plaintiffs, as well as plaintiffs' non-opt-

in declarants, are individuals for whom Hearst lacked contact information.

It is not clear, however, what steps plaintiffs took to identify potential opt-ins beyond

simply relying on the contact information Hearst provided.  For example, we do not know

whether they searched for the online resumes that some interns posted publicly, *see, e.g.*, Bryan

Neilon Dep. at 54:10-55:4, 56:2-4, or the LinkedIn profiles that others maintained, *see, e.g.*,

Ashley Ross Dep. at 54:18-55:9; Yale Dep. at 75:9-23; Dunn Dep. at 63:4-7; Henderson Dep. at

116:25-117:4; Perle Dep. 129:19-25; Sullivan Dep. 39:16-24.  Nor do they reveal how many

interns responded to the various social media and other alternative methods of notice the Court

permitted.  Accordingly, it is impossible to assess how much of the low opt-in rate is attributable

to the lack of contact information, how much to plaintiffs' lack of effort, and how much to

potential class members' decisions that they simply did not agree with plaintiffs' allegations or

that they did not want to participate in this case.  A number of Hearst's declarants, for example,

testified that they did receive the class notice, but chose not to opt in.  *See, e.g.* Annick Thomas

Dep. at 93:15-94:15, 99:2-100:8; Katie Riordan Dep. at 19:12-22:13; Ashley Ross Dep. at 34:24-

35.  Others, contrary to plaintiffs' suggestion, testified that they understood the suit sought

payment for time spent during their internships but nonetheless elected not to participate.  *See*

Melanie Rud Dep. at 23-24; Melissa Groher Dep. at 51-52; Mary Beth Yale Dep. at 114, 116-17;

Kimberly Holiver Dep. at 73-74, 81.

### B.  Plaintiffs Demand Hearst's Communications With Interns; The Court Denies That Request.

On December 4, 2012, New York Magazine published a brief article noting that Hearst,

"preparing to defend itself against the infamous class-action lawsuit filed earlier this year," had

emailed "a number" of interns, inviting them to contact Hearst about their internship experiences; the article included the text of the email.[3]  Plaintiffs' counsel demanded that Hearst produce a list of everyone with whom its counsel communicated, and the email addresses it used. Hearst declined, on the grounds that such information was protected by the work product doctrine.

On January 17, 2013, with the opt-in period long closed, and more than six weeks after the New York Magazine article had appeared, plaintiffs raised the dispute before Magistrate Judge Andrew J. Peck.  Plaintiffs requested that the Court order Hearst to produce copies of all of the emails that had been sent, and copies of all responses.  Hearst argued in response that the identities of its prospective witnesses were protected work product.  After argument, Judge Peck agreed with Hearst, and denied the plaintiffs' request.[4]  Plaintiffs had 14 days to appeal Judge Peck's ruling to this Court, as Judge Peck reminded them at the conclusion of the hearing. Plaintiffs chose not to appeal.

Hearst was able to speak to a number of former interns, many of whom were willing to sign declarations.  Of Hearst's declarants, all but five had been identified to the plaintiffs before October 19, 2012.[5]  And of those five, only two had interned within the relevant time period to be eligible to opt in to this action.  Plaintiffs sought and were granted an extension of the discovery period to depose Hearst's declarants.  They took a number of depositions, but with

---

[3] *See* http://nymag.com/thecut/2012/12/hearsts-lawyers-e-mailing-former-unpaid-interns.html (last visited March 7, 2013).

[4] Judge Peck ordered Hearst to produce a sample of the form of emails that were sent, with identifying information redacted; Hearst promptly did so.

[5] Plaintiffs' claim that nineteen had not been included on any prior class list, Pl. Brf. at 2, is not correct.

almost two weeks left in the discovery period, elected to cancel approximately 40 more depositions that had been scheduled.

## ARGUMENT

### A.    Plaintiffs' Request Is Untimely And The Court Has Already Considered These Issues.

This is now the third time that plaintiffs have complained about the lack of more complete contact information.  The Court (Baer, J.) addressed that issue last September, by authorizing several alternative methods of notice and ordering Hearst to begin collecting intern contact information, which Hearst has done.  The Court (Peck, J.) addressed the issue a second time in January when plaintiffs sought Hearst's communications with potential declarants.

There is no need to address the matter again, because there is no new relevant information suggesting that the Court should take any different or additional action than it already has taken.  Plaintiffs argue, for example, that further remedies are necessary because Hearst "fail[ed] to collect and produce contact information for potential collective members."  Pl. Brf. at 7.  But Hearst *did* produce contact information – all of the lists that it had, supplemented by the contact information that the Court ordered Hearst to collect beginning last September. The only new fact to arise since September is the unremarkable discovery that Hearst engaged in its own efforts, protected by the work product doctrine, to go beyond the lists and identify witnesses as part of its defense.  Even that effort was known to plaintiffs by no later than December 4, 2012, and when they moved for disclosure of those communications in mid-January.

The only other novelty is plaintiffs' insinuation that Hearst acted improperly by not acting as plaintiffs' agents in trying to sign up more opt-in plaintiffs.  As shown in the following section, that argument fails as a matter of law.  Hearst engaged in no misconduct, and there is no

basis for the Court to reconsider facts that already have been addressed twice.  Plaintiffs' motion

should be denied.

### B.      Hearst's Communications With Former Interns Were Entirely Proper.

Restrictions on a party's ability to communicate with unrepresented witnesses during

litigation implicates First Amendment concerns.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104

(1981).  And while the Court has discretion to regulate such communications where necessary to

prevent abuse, no such order may enter absent "a specific record showing by the [party moving

to limit communications] of the particular abuses by which it is threatened . . . giving explicit

consideration to the narrowest possible relief which would protect the respective parties."  *Id*. at

102.[6]

There is no evidence of any abuse by Hearst here; to the contrary, Hearst took affirmative

steps to ensure that the declarants were not represented by counsel in this matter and did not

intend to opt in to this action as plaintiffs before speaking substantively with Hearst counsel, and

that the witnesses understood that their participation was entirely voluntary.  The witnesses

expressly state in their declarations that they understood these things.  *See, e.g.*, Declaration of

Stephanie Saltzman, ¶10.[7]  When asked about the declaration gathering process in deposition, the

---

[6] Although *Gulf Oil* involved communications by plaintiffs with putative class members in a Rule 23 class action, the principles of *Gulf Oil* govern communications by defendants in FLSA collective actions as well.  *See, e.g., Ahle v. Veracity Research Co.*, 663 F. Supp. 2d 713, 716 (D. Minn. 2009); *Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D.Ga. 2009); *see also Brown v. Mustang Sally's Sprits and Grill, Inc.*, 2012 U.S. Dist. LEXIS 144722, at *5-16 (W.D.N.Y. Oct. 5, 2012) (following Gulf Oil in ruling on motion to limit defendant's communications with putative class members in FLSA collective action); *Austen v. Catterton Partners V, LP*, 831 F. Supp. 2d 559, 567 (D. Conn. 2010); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1246 n.4 (S.D. Ala. 2009) (following *Gulf Oil* and noting that Rule 23 decisions provide a helpful analogy in class member communications cases in the FLSA collective action context due to the "sparse authorities on the subject of improper communications between an employer and prospective opt-in plaintiffs").  This case, in any event, involves a putative Rule 23 class action along with an FLSA collective action.

[7] "Before I provided the information for this statement I was asked if I was represented by counsel (I am not) or if I intended to join the current lawsuit (I do not).  Before I provided the information

witnesses confirmed those portions of their declarations, testifying that they understood their participation was voluntary and that Hearst had asked them whether they intended to join this action before proceeding.[8]

Hearst's communications accordingly were not misleading or coercive, and Hearst neither said nor did anything to discourage the witnesses from participating in this lawsuit as plaintiffs if they chose.  Plaintiffs, having taken dozens of depositions of Hearst declarants and inquiring of nearly all about their communications with Hearst, offer no evidence to support any other conclusion.  The communications accordingly were entirely permissible.  *See, e.g.*, *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1366-67 (S.D. Ga. 2008) (rejecting motion to strike where no clear record evidence of abuse); *Jackson v. Papa John's USA, Inc.* 2009 WL 650181, at *3 (N.D. Ohio Mar. 10, 2009) (rejecting motion to strike and for protective order absent evidence of coercion, and "[t]his court will not presume that Defendants' communication

---

for this statement, certain information was communicated clearly to me, including that my participation was completely voluntary, and that I would not receive any positive employment consequence or other benefit from Hearst by participating.  After hearing and understanding the above information, I made a voluntary decision to provide the information for this statement."  Each of the other declarations contains a similar affirmation.  Batten Decl. Ex. F.

[8] *See, e.g.*, Deposition of Emily Simmons at 19:3-24 ("Q. Did Christine or any other Hearst lawyer tell you that you have a right to join the lawsuit?  A. Yeah. . . .  Q. What did they tell you about your rights?  A. Christine described how there was a class action lawsuit, that several interns were joining, and that this lawsuit, Outten & Golden, was supporting the plaintiffs, and that it was an option to join that or remain neutral, and that I shouldn't respond if I had intentions or had already joined."); Deposition of Molly Ritterbeck at 132:13-133:18 ("Q. When you spoke with Ms. Hauser, did she tell you that you have a right to join this lawsuit?  A. Yes. . . .  Q. So early in the conversation you had with Ms. Hauser, you told her that you did not want to join the lawsuit?  A. Yes. . . .  Q. Why did you turn it down?  A. I had an exceptional experience with Hearst at my internship at Cosmopolitan.  It was very educational and beneficial to me and my career, and I ended up working at Hearst as proof of how I benefited from that, so I had no interest in joining the lawsuit."); Deposition of Marguerite Berard at 109:25-110:8 (Q. Did Kristen Hauser tell you at any point that you may have rights in this lawsuit?  A. Yes.  Q. What did she say about that?  A. She said that if I chose, I could be a part of this lawsuit, I could opt in."); Buchalter Deposition at 20:24-21:9 ("Q. Okay.  So she told you [the lawsuit] was about whether or not interns should have been paid.  A. Right.  Q. And did Kristen Hauser tell you that interns have a right to join the lawsuit?  A. Right.  She did.").

was coercive based solely on the fact that" there was an employee/employer relationship; the court also noted the benefit of allowing defendant to conduct fair investigatory interviews of plaintiffs because they benefit both parties and the court); *Basco v. Wal-Mart Stores, Inc.*, 2002 WL 272384, at *4 (E.D. La. 2002) (denying protective order where "plaintiffs . . . have not provided the Court with evidence to show that Wal-Mart has abused the process or attempted to undermine the purposes of Rule 23 . . . [nor] explicitly or implicitly attempting to discourage or prevent the employees from participating in the lawsuit, nor do they indicate that any threats were made").

Plaintiffs' complaints about Hearst's communications amount to demands that Hearst serve as plaintiffs' agent, by providing the company's witnesses with copies of the opt-in notice, giving them plaintiffs' counsel's telephone number, telling them that they could recover money if they joined as plaintiffs, and the like.  Pl. Brf. at 3-4.[9]  They cite no case requiring that a defendant communicate such things, and these are merely plaintiffs' own inventions.  *See, e.g.*, *Rosales v. El Rancho Farms*, 2011 WL 6153212, at *6 (E.D. Cal. 2011) (denying motion to strike even though defense counsel failed to mention the lawsuit when collecting declarations, and rejecting argument that defendant was required to provide notice of the lawsuit to employees before speaking with them); *Ross v. Wolf Fire Protection, Inc.*, 799 F. Supp. 2d 518 (D. Md. 2011) (denying motion to strike and for protective order despite counsel's failure to advise that she did not represent the employees, nor tell them that they could be entitled to join the action as plaintiffs).

---

[9] Plaintiffs also complain that Hearst did not advise the declarants that submitting a declaration might affect their rights to recover.  Leaving aside the lack of any obligation to give that advice, it is not true: an individual's right to recovery is not diminished by a decision to give or withhold a declaration.

### C.        Plaintiffs Are Not Entitled To The Relief They Seek.

Both of the cases on which plaintiffs rely for the sending of corrective notice involved

misconduct by the employer that bears no comparison to the facts in this case.  In *Belt v. Emcare*

*Inc*., 299 F. Supp. 2d 664 (E.D. Tex. 2003), the defendant undermined the court's approved form

of notice by sending unilaterally a notice of its own to the class at the same time.  *Id*. at 666.  The

court found the notice to be substantially misleading and coercive.  It misrepresented the issues

in the case; suggested that the case was an attack on the class members' status as professionals;

misrepresented the available damages; equated the FLSA collective action to a medical

malpractice case, "without any legitimate basis"; made disparaging remarks about the plaintiffs'

bar; and insinuated that the lawsuit could threaten the class members' job stability.  *Id*. at 666-67.

The *Belt* court began by acknowledging that employers have a First Amendment right to

communicate with absent class members, as discussed in Part B, above, but held that Emcare's

letter was "misleading in several ways," "coercive," and "intended to undermine the purposes of

the collective action by encouraging absent class members not to join."  *Id*. at 668-69.

Similarly, in the other case plaintiffs cite, *Villa v. United Site Services of Cal., Inc*., 2012

WL 5503550 (N.D. Cal. 2012), declarations were collected from current employees, who were

told that they were required to meet with their supervisors, during work hours and in the

workplace, to discuss the declarations.  *Id*. at *15.  Some were given the draft declarations in

one-on-one meetings that they had to attend in order to collect their paychecks.  *Id*.  And the

employees were not told that they had the right to join the lawsuit if they chose.[10]

---

[10] The court in *DeAscensio v. Tyson Foods, Inc*., 342 F.3d 301, 313 (3rd Cir. 2003), on which
plaintiffs also rely, discussed re-opening the notice period only in two brief paragraphs at the end of an
opinion largely devoted to unrelated issues (and which substantially altered the scope of the case by
dismissing a pendent state-law claim under Rule 23).  Citing no cases on the standards governing such
relief, the court ordered the notice period reopened.  *Id*.  Unlike this case, however, (a) the employer had
taken responsibility itself for sending the class notice, and substantially failed to do so completely, and (b)

None of the behavior found questionable in *Belt* or *Villa*, nor anything comparable, occurred here.  Plaintiffs do not allege any misleading or coercive communications, nor did any occur, and Hearst made no effort to discourage participation in this case.  Indeed, Hearst did not proceed in talking with any individual unless and until they said they did not intend to participate in this case as a plaintiff.  *See supra* nn.7-8.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' Motion To Re-Open The FLSA Notice Period and for Corrective Notice should be denied.

Respectfully submitted,

Dated: March 15, 2013

HEARST CORPORATION


/s/ Jonathan R. Donnellan

Of Counsel:                                    Eve B. Burton
Proskauer Rose LLP                             Jonathan R. Donnellan
Mark W. Batten                                 Kristina E. Findikyan
One International Place                         Shari M. Goldsmith
Boston, MA 02110-2600                          Courtenay B. O'Connor
(617) 526-9850                                 300 W. 57th Street
(617) 526-9899 fax                             New York, NY 10019
Email: mbatten@proskauer.com                   (212) 841-7000
                                               (212) 554-7000 fax
                                               Email: jdonnellan@hearst.com

                                               *Attorneys for Defendant Hearst Corporation*

---

plaintiffs alleged that the employer "improperly discouraged its current and former employees from participating in the action," which did not occur here.  *Id*. at 304-305.

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party to this action by operation of the Court's ECF filing system, this 15th day of March, 2013.

/s/  Mark W. Batten
Mark W. Batten