**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Juno Turner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XUEDAN WANG and ERIN SPENCER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HEARST CORPORATION,<br><br>Defendant. | **Oral Argument Requested**<br><br>**12 Civ. 0793 (HB) (AJP)** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ................................................................................................... 2

I.   Plaintiffs Are Entitled to Summary Judgment Because Hearst Has Failed
     to Raise a Material Issue of Fact that Plaintiffs Were Not Employees............. 2

     A.   The Court Should Reject Hearst's Attempt to Dramatically
          Expand *Walling*'s Narrow Trainee Exception ..................................... 2

     B.   Whether Interns Perform Productive Work Is Critical to Determining
          Whether They Are Employees or Trainees............................................ 3

     C.   The Parties Agree on the Other Relevant Factors.................................. 4

     D.   Hearst Has Failed to Raise Any Material Issues of Fact as to Plaintiffs'
          Status as Employees ...................................................................... 6

     E.   Hearst Has Failed to Raise Any Material Issues of Fact to Rebut
          Plaintiffs' Showing that Its Conduct Was Willful .................................. 8

II.  Plaintiffs Have Established All of the Prerequisites for Class Certification
     Under Rule 23. ............................................................................... 10

     A.   Hearst Concedes that Plaintiffs Have Identified Common Issues ................ 10

          1.   Hearst Acknowledges that Plaintiffs Have Identified
               Common Issues, and Then Identifies More .............................. 11

          2.   Hearst's Summary Judgment Evidence Bolsters Plaintiffs'
               Commonality Showing ...................................................... 13

          3.   Hearst's Attempt to Use *Dukes* to Argue that Plaintiffs Cannot Certify a
               Class Fails ..................................................................... 14

     B.   Hearst's Predominance Attack Also Fails ............................................ 17

     C.   Hearst's Superiority Argument Is Meritless ......................................... 20

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Archie v. Grand Cent. P'ship*,
  997 F. Supp. 504 (S.D.N.Y. 1998).................................................................. passim

*Damassia v. Duane Reade, Inc.*,
  No. 04 Civ. 8819, 2005 WL 1214337 (S.D.N.Y. May 20, 2005).............................................9

*Donovan v. New Floridian Hotel, Inc.*,
  676 F.2d 468 (11th Cir. 1982) ...............................................................................3

*Espinoza v. 953 Assocs. LLC*,
  280 F.R.D. 113 (S.D.N.Y. 2011) .........................................................................16

*Flores v. Anjost Corp.*,
  284 F.R.D. 112 (S.D.N.Y. 2012) .........................................................................15

*Jacob v. Duane Reade, Inc.*,
  No. 11 Civ. 0160, 2013 WL 1137024 (S.D.N.Y. Mar. 20, 2013) .................................. passim

*Kaplan v. Code Blue Billing & Coding, Inc.*,
  Nos. 12 Civ. 12011, 12 Civ. 12376, 12 Civ.12679, 2013 WL 238120 (11th Cir. Jan.
  22, 2013) .........................................................................................5

*Kiobel v. Royal Dutch Petroleum Co.*,
  No. 02 Civ. 7618, 2004 WL 5719589 (S.D.N.Y. Mar. 31, 2004) .........................................13

*Langley v. Coughlin*,
  715 F. Supp. 522 (S.D.N.Y. 1989).........................................................................13

*Morris v. Affinity Health Plan, Inc.*,
  No. 09 Civ. 1932, 859 F. Supp. 2d 611 (S.D.N.Y. 2012).......................................................15

*Okoro v. Pyramid 4 Aegis*,
  No. 11 Civ. 267, 2012 WL 1410025 (E.D. Wis. Apr. 15, 2012).............................................3

*Reich v. S. New Eng. Telecomms. Corp.*,
  121 F.3d 58 (2d Cir. 1997).........................................................................20

*Ross v. RBS Citizens, N.A.*,
  667 F.3d 900 (7th Cir. 2012) .........................................................................15

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944).........................................................................5

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011) ............................................................4, 5

*Tiro v. Public House Invs., LLC*,
    Nos. 11 Civ. 7679, 11 Civ. 8249, 2012 WL 6053961 (S.D.N.Y. Dec. 4, 2012) ....................14

*In re VisaCheck/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2011)............................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ............................................................ passim

*Youngblood v. Family Dollar Stores, Inc.*,
    No. 09 Civ. 3176, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ............................................16

FEDERAL RULES

Fed. R. Civ. P. 30(b)(6)............................................................8

Fed. R. Civ. P. 56 ............................................................ passim

Fed. R. Evid. 801(d)(2)(D) ............................................................6

## PRELIMINARY STATEMENT

The Court should grant Plaintiffs' motion for partial summary judgment.  Hearst fails to rebut or even address abundant evidence that it used Plaintiffs to perform productive work as part of its day-to-day operations and to fill in gaps in its skeletal workforce, and does not present evidence that Plaintiffs received classroom-like education.

Instead, Hearst asks the Court to ignore the evidence and adopt an extreme legal position that is contrary to Supreme Court precedent, trainee cases, and the U.S. Department of Labor's guidance on unpaid internships, and that no other court has ever adopted.  If Hearst had its way, employers could categorically exclude young, inexperienced workers (many of whom are desperate for employment) from the protections of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") if they agree to work for free and if they obtain *some benefit* from their work experience.

The Court should also grant Plaintiffs' motion for class certification.  Hearst concedes that Plaintiffs have identified several common issues that rely on generalized proof, including that interns uniformly performed productive work, that Hearst did not structure any internships around a classroom or educational experience, and that Hearst uniformly classified interns as non-employees regardless of the magazines at which they worked, who their supervisors were, and the types of tasks they performed.  None of the issues that Hearst claims are individualized predominate over the common issues and, in fact, most, if not all, of the issues that Hearst claims Plaintiffs overlooked are also common to the class.

## ARGUMENT

**I.      Plaintiffs Are Entitled to Summary Judgment Because Hearst Has Failed to Raise a Material Issue of Fact that Plaintiffs Were Not Employees.**

      **A.      The Court Should Reject Hearst's Attempt to Dramatically Expand *Walling*'s Narrow Trainee Exception.**

Hearst asks the Court to dramatically expand the very narrow exception that *Walling v. Portland Terminal Co.* allowed for participants in a short-term training program to excuse its reliance on thousands of interns to perform productive work at its offices for no pay. According to Hearst, if an internship does not "contemplate[] compensation" and if the interns obtain some benefit from their work – even just work experience – they are not protected by the FLSA. Def.'s Opp'n at 26-27.

Hearst's reading of *Walling* cannot be reconciled with the decision itself or with the caselaw and U.S. Department of Labor ("DOL") guidance that applied *Walling* in other trainee cases. Nothing in *Walling* or the FLSA supports Hearst's argument that the FLSA protects only those who "work[ ] for pay (and not some other reason)." Def.'s Opp'n at 26. The U.S. Supreme Court rejected this argument in *Tony & Susan Alamo Found. v. Sec'y of Labor*, where workers vehemently protested that they were anything other than volunteers whose work served their own ends. 471 U.S. 299, 302 (1985). Despite the workers' protests, the Supreme Court held that they could not waive their right to be paid for work because "[i]f an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Id. Walling* also specifically cautioned against employers who might attempt to use the decision to "open up a way to" evade the law and thus foreclosed its application to schemes, like Hearst's, that violate the "letter or the spirit"

of the FLSA by "accept[ing] the services of beginners at pay less than the legal minimum[.]" 330 U.S. 148, 153 (1947).

Hearst also entirely ignores the factual differences between the railroad trainees and its interns that drove the Supreme Court's decision in *Walling*. The railroad trainees participated in a course that was the same as courses offered in school except that it was on the railroad's premises. *Id*. at 152-53. The training lasted seven or eight days. *Id*. at 149. The trainees did not displace regular employees. *Id*. at 149-50. The railroad "receive[d] no immediate advantage from *any* work done by the trainees." *Id*. at 153 (emphasis added). The trainees' supervisors were required to "stand immediately by to supervise whatever the trainees d[id]." *Id*. at 149-50. As Hearst admits, none of these facts is present here.

### B.      Whether Interns Perform Productive Work Is Critical to Determining Whether They Are Employees or Trainees.

Hearst cannot claim that interns' work was not productive or important to Hearst's operations. Instead, it argues that the nature of interns' work is not important. This argument is contrary to *Walling*, decisions that have applied *Walling*, and to the long-held view of the DOL. All have held that the nature of the work is critical to determining whether alleged trainees are employees. *See, e.g., Walling*, 340 U.S. at 153 (trainees are not employees because railroad received "no immediate advantage from any work done by the trainees"); *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 470-71 (11th Cir. 1982) (former patients' work performing tasks at defendants' retirement homes was of economic benefit to defendants); *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 514, 516, 534-35 (S.D.N.Y. 1998) (trainees' activities, including maintenance, outreach, food preparation, and clerical work, provided an economic advantage); *Okoro v. Pyramid 4 Aegis*, No. 11 Civ. 267, 2012 WL 1410025, at *7 (E.D. Wis. Apr. 15, 2012) (defendant benefited from plaintiff's work performing day-to-day tasks of its business); U.S.

3

Dep't of Labor, Fact Sheet #71 ("DOL Factors") (attached as Exhibit 241 to Decl. of Rachel Bien in Supp. of Pls.' Motions for Summ. J. & Class Certification ("Bien Decl.")) (where "interns are engaged in the operations of the employer or are performing productive work (for example, filing, performing other clerical work, or assisting customers)," they are not excluded from the FLSA).

### C.   The Parties Agree on the Other Relevant Factors.

Hearst is wrong that Plaintiffs have relied on the wrong test.  All decisions addressing the issue of alleged trainees have evaluated the same or similar factors on which Plaintiffs rely – the nature of the work, whether the employer derived an immediate advantage from the work, whether the training is similar to classroom training, and whether the work solely benefited the trainees.  *See, e.g., Walling*, 330 U.S. at 152-53 (considering whether the railroad received any "immediate advantage" from the trainees' work; whether trainees received instruction akin to that offered by a "public or private vocational school;" and whether the trainees' work served only their own interest); *Archie*, 997 F. Supp. at 531-32 (considering the nature of the work, whether the defendant received an immediate advantage from the work, the training provided, and the benefits to the plaintiffs).  These are also the factors that the DOL has adopted for evaluating unpaid internships.  *See* Bien Decl. Ex. 241 (DOL Factors).  Hearst's argument that Plaintiffs rely exclusively on productive work that Hearst admits that interns performed simply ignores pages and pages of Plaintiffs' opening brief, where Plaintiffs also address the other factors and demonstrate that they weigh in Plaintiffs' favor.

Hearst argues for a "balance of the benefits" test that it claims is different than the test that Plaintiffs applied.  However, the case that used this so-called test, *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 529 (6th Cir. 2011), actually evaluates a set of factors that

4

are very similar to the ones that Plaintiffs argue should be used. *See id*. at 530-31. Although *Solis* considered almost the same factors, the facts were very different than the facts here because, there, the sanitarium's sole purpose was to serve as a training vehicle for students, the students did not displace paid workers, their work cost the sanitarium money, and the students received training comparable to vocational school courses. *Id*. at 520, 530-31. In addition, *Velez v. Sanchez* certainly did not "ma[k]e clear" that the test that the Court should apply is a balance of the benefits test because it interpreted a different provision of the FLSA for domestic workers. *See* 693 F.3d 308, 330 (2d Cir. 2012). To the extent that *Velez* referenced trainee cases, it was in *dicta*. *Id*. Moreover, *Velez* considered a host of factors – not just whether the plaintiff benefited or was paid – in concluding that the defendant had not met its burden. *Id*. at 331.

Hearst attacks the DOL Factors, arguing that they are not binding on the court, but concedes that they are relevant to the Court's determination. *See* Def.'s Opp'n at 32 (factors "may inform the totality of the circumstances balance of the benefits test applicable in this case"). The DOL Factors are worthy of deference because they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Most courts agree. *See Kaplan v. Code Blue Billing & Coding, Inc.*, Nos. 12 Civ. 12011, 12 Civ. 12376, 12 Civ.12679, 2013 WL 238120, at *3 (11th Cir. Jan. 22, 2013) (the DOL Factors are "pertinent to determining whether a trainee qualifies as an employee under the FLSA"); *Archie*, 997 F. Supp. at 532 ("The [DOL Factors are] a reasonable application of the FLSA and *Portland Terminal* and [are] entitled to deference by this court"). Although *Solis* says that the DOL Factors are "rigid," 642 F. 3d at 525, it is critical of the DOL's "all-or-nothing" approach and not its factors. *Id*. However, there is good reason for the DOL's approach because *Walling does* suggest, contrary to *Solis*, that what was critical to its

5

decision was whether the railroad trainees' work provided an immediate advantage to the railroad. *See Walling*, 330 U.S. at 152 ("Accepting the unchallenged findings here that the railroads receive no 'immediate advantage' from any work done by the trainees, we hold that they are not employees within the Act's meaning.")  Even if the Court adopts an approach that weighs several factors, it should still rely on the DOL Factors because they are consistent with *Walling* and the cases applying it.  Moreover, under either approach, the evidence decidedly favors Plaintiffs.

> **D.   Hearst Has Failed to Raise Any Material Issues of Fact as to Plaintiffs' Status as Employees.**

None of the arguments that Hearst makes in response to Plaintiffs' Rule 56.1 Statement or the evidence that it cites creates material issues of fact that defeat Plaintiffs' showing that they were employees under the FLSA and NYLL.

First, Hearst does not dispute that each Plaintiff performed work from which Hearst obtained an immediate advantage and that was also performed by paid employees.[1]  *See* Def. SOF ¶¶ 124, 155-57, 160, 174-77, 180-91, 214, 219, 222-26, 228, 230, 242-46, 249-50, 262, 280-86, 300, 305-10, 312, 322-29, 348-50, 358, 360.

Second, although Hearst disputes the way that Plaintiffs describe their training, the evidence that it submitted in response only reinforces that Plaintiffs' internships were structured around Hearst's operations and were not designed as classroom or educational experiences.  For example, Hearst attempts to dispute Wang's evidence that she learned how to do her job from another intern and did not receive any other formal or informal training by pointing to evidence

---

[1]     Hearst repeatedly contends that Plaintiffs have not supported statements in their Local Rule 56.1 Statement with admissible evidence pursuant to Fed. R. Civ. P. 56(c).  *See, e.g.*, Def. SOF ¶¶ 230, 262, 285, 300.  However, the statements made by its own employees during the course of their employment to which Hearst objects are admissible non-hearsay under Fed. R. Evid. 801(d)(2)(D).

that Wang learned on-the-job about how a fashion closet works and that she made contacts with publicists and designers. *See* Def. SOF ¶¶ 205, D224, D230-34. Hearst also attempts to dispute Mancini's evidence that the only training she received was how to perform her day-to-day tasks with evidence that Mancini also observed what went on at the magazine. *See* Def. SOF ¶ 259. However, the fact that Plaintiffs learned how to perform their duties by actually doing the work or observing others do it and that they made contacts in the process does not transform their internships into a classroom or educational experience because this is the type of learning that is gained in any job. *See Archie*, 997 F. Supp. at 532-33 (on-the-job learning plus counseling and orientation was not "training that is similar to or even close to that which would be provided in a vocational school").

Third, Hearst has failed to produce any evidence creating a material fact issue as to the extent of supervision that Plaintiffs received. For example, Hearst points to evidence that Mancini's supervisor gave her feedback on her performance, gave her career advice, and introduced her to a copy editor who had a job lead, but none of this undercuts Mancini's evidence that she was not closely supervised. *See* Def. SOF ¶¶ 260, D41-43, D48-51, D53-54. Similarly, Hearst's evidence that an employee supervised Wagster's preparation of a guest list, that a mistake that Wagster made was corrected, and that Wagster understood the purpose of an event he attended does not rebut his testimony that he was not closely supervised. *See* Def. SOF ¶ 304. Hearst's evidence that Skorka assisted and attended meetings with her supervisors who gave her feedback on her work *supports* Skorka's testimony that her supervision at Hearst was comparable to what she receives in her current paid position. *See* Def. SOF ¶¶ 270, D105-20. Ultimately, none of Hearst's evidence comes close to showing that Plaintiffs' supervisors "st[oo]d immediately by to supervise whatever [Plaintiffs] d[id]," *Walling*, 330 U.S. at 150, that

Plaintiffs regularly "shadowed" their supervisors, or that their supervisors provided Plaintiffs with "close and constant" supervision.  Bien Decl. Ex. 241 (DOL Factors) at 2; *Archie*, 997 F. Supp. at 517, 533 (supervision that was limited to learning how to perform the job was not sufficient to meet trainee test).

Finally, there is also no real dispute as to the benefits that Plaintiffs obtained from their internships.  For the most part, Plaintiffs do not dispute what Hearst claims that they took away from their internships: career advice, job references, work experience, professional and office etiquette, and some familiarity with the publishing industry.  *See* Pls.' Resp. to Def.'s SOF ¶¶ D14, D49, D53, D57, D87, D89, D118, D120-21, D134-35, D150, D161, D164, D168, D178, D183-83, D235, D249.  Even construing this evidence in the light most favorable to Hearst, all of the factors that courts and the DOL consider in determining whether plaintiffs are trainees or employees overwhelmingly favor Plaintiffs.  No reasonable jury could conclude that because Plaintiffs liked their internships, made potential career contacts, saw how magazines worked, and got some career advice, they are not employees entitled to pay for the productive work that they performed and that benefited Hearst.  *See Archie*, 997 F. Supp. at 533 (even though program participants received an "enormous[]" benefit from the counseling and basic job skills they obtained, their alleged employer received an even greater advantage from the work they performed at below market rates).

### E.   Hearst Has Failed to Raise Any Material Issues of Fact to Rebut Plaintiffs' Showing that Its Conduct Was Willful.

Hearst admits all of the facts on which Plaintiffs rely to establish that its conduct was willful.[2]  In particular, Hearst admits that it did nothing to determine whether its no pay policy

---

[2]     Hearst does not dispute that Plaintiffs are entitled to liquidated damages if they prevail on liability.  *See* Def.'s Opp'n at 49-50.

was lawful by seeking advice from the DOL[3] or reviewing the tasks, supervision, or training that interns actually receive.  *See* Def. SOF ¶¶ 30-31, 67, 69-70.  Moreover, although Hearst relied entirely on receipt of academic credit to justify its no pay policy, Hearst admits it does not actually verify that interns receive academic credit for their internships and, on several occasions, hired interns who could not receive academic credit.  *Id*. ¶¶ 79-83.  In light of these admissions and the fact that Hearst admits that it does not actually ask schools why they approve internships at the company, *see id*. ¶ 75, Hearst's suggestion that its academic credit "requirement" ensures that interns receive an educational experience rings hollow.  *See id*. ¶ 33.

   Whether Hearst was willfully ignorant, at the very least, the evidence establishes that it acted with "reckless disregard" for whether its unpaid intern policy was illegal.  Hearst cannot dispute that it was aware of the FLSA's requirements and the DOL Factors in particular, yet it did nothing to ensure that it was compliant and simply closed its eyes and hoped that it would not be sued.  This is the definition of willful behavior.  *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2005 WL 1214337, at *3 n.2 (S.D.N.Y. May 20, 2005) (Lynch, J.) (willfulness finding is warranted where evidence shows "actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation").  The footnote in *Copantitla v. Fiskadio Estiatorio, Inc*. that Hearst cites does not help it because it simply clarifies that a defendant must act recklessly, not just unreasonably, to be found to have acted willfully.  788 F. Supp. 2d 253, 318 n.28 (S.D.N.Y. 2011).  In addition, in that case, there was evidence that the defendant had

---

[3]   Although Hearst denies that it did not seek advice from the DOL, in response to the question, "Has Hearst consulted with the Department of Labor to determine whether its intern policies are lawful?," Hearst's Fed. R. Civ. P. 30(b)(6) witness on the relevant topic stated, "No." *See* Ex. 291 (Roberts Tr. II) 56:24-57:3.  Hearst's reliance on a declaration from a former DOL compliance officer, which it acquired for purposes of its defense in this litigation, is not a defense to a decision that Hearst made years ago and cannot establish that Hearst took the steps that were necessary at the time it classified all interns as non-employees to ensure that its policy was compliant with the FLSA.

periodically consulted with an accountant regarding its compensation policies that created an issue of fact. *Id*. at 316-18.  Here, Hearst did not consult with the DOL when it made its decision not to pay interns, *see supra* note 3, and does not point to any evidence that it sought independent advice regarding the legality of its no pay policy at any time.

## II.    Plaintiffs Have Established All of the Prerequisites for Class Certification Under Rule 23.

Hearst does not dispute that Plaintiffs have satisfied the numerosity, typicality, and adequacy requirements of Fed. R. Civ. P. 23 ("Rule 23").  Although Hearst claims that Plaintiffs have not satisfied commonality, Rule 23(a), or predominance, Rule 23(b)(3), it concedes that Plaintiffs have identified several common issues, identifies additional common issues, and fails to point to any individualized issues that will predominate over the many common ones.

Contrary to Hearst's claim, Plaintiffs do not rely solely on the testimony of the Plaintiffs and opt-ins and do not intend to do so at trial.  In fact, the vast majority of the evidence on which Plaintiffs rely is testimony from Hearst's own declarants – many of whom are potential class members – and Hearst's own documents showing what interns do.

### A.    Hearst Concedes that Plaintiffs Have Identified Common Issues.

Hearst concedes that Plaintiffs have identified common issues, including whether Hearst derived an immediate advantage from interns' work, whether interns displaced paid workers, whether internships were structured around Hearst's actual operations as opposed to a classroom or academic experience, whether Hearst internships were for the benefit of the interns, and whether interns are employees as a matter of economic reality.  *See* Def.'s Opp'n at 36. Although Hearst contends that Plaintiffs have not identified all of the relevant issues, it is well-established that a single common question of law or fact is sufficient to satisfy Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011).  Even if Hearst is right that there

10

are other issues, the issues that Hearst has identified are also susceptible to common proof and support class certification.

> **1.    Hearst Acknowledges that Plaintiffs Have Identified Common Issues, and Then Identifies More.**

Hearst does not deny that the questions that Plaintiffs have identified are common to the class.[4]  Def's. Opp'n at 36-37.  Instead, Hearst argues that Plaintiffs have not identified enough common issues and points to additional issues: whether receipt of academic credit is relevant to the determination of whether interns are employees, whether interns expected compensation, and whether interns benefitted from their internships.  *Id*. at 38-40.  All of these issues are common to the class.

First, whether receipt of academic credit is relevant to the merits is a common legal issue for the class.  Moreover, if it is relevant, Hearst argues that the weight that the Court accords to academic credit should be the same for all interns because it claims that academic credit "signifies that accredited institutions of higher education have determined Hearst's internship program to be of genuine educational value."  Def.'s Opp'n at 39.  Hearst does not argue that the weight should vary depending on the school, the number of credits, or the basis on which the credits were awarded.  *See id*.  Thus, to the extent that this factor is relevant, it is another common issue that unites all class members.

---

[4]     Hearst is wrong that Plaintiffs must identify each task that interns performed and how that particular task economically benefited Hearst in order to prove the merits.  *See* Def.'s Opp'n at 37.  The cases on which Hearst relies, as well as every other case, look at the nature of the work generally, and whether it is work that by its nature benefits the employer.  *See, e.g., Archie*, 997 F. Supp. at 513-14, 535 (day-to-day maintenance and outreach, food preparation, and clerical work was productive because it permitted the employer to meet its contractual obligations).  Here, Plaintiffs have done more than what the law requires because they have demonstrated not only the nature of the work that interns performed at Hearst, but also that interns performed many of the same tasks across the company and that these are also tasks that entry-level employees performed at Hearst.  *See* Pls.' Br. at 14-16.

Second, Hearst argues that whether interns expected compensation in the form of wages is relevant to the merits.[5]  This is another common legal and factual issue because whether it is relevant will be the same for all interns and there is uniform evidence that interns did not expect to be paid wages (even if they did expect other in-kind benefits).  *See* Pls.' Br. at 33; Def.'s Opp'n at 7.

Third, Hearst argues that another issue is whether interns benefited from their internships. This issue is also common to all interns and can be answered through generalized proof.  The evidence demonstrates that interns described receiving very similar benefits from their internships: office skills, professionalism and office etiquette, knowledge of the magazine industry, contacts, career advice, and job references.  *See* Def.'s Opp'n at 17-21.  The Court can determine on a classwide basis whether benefits such as these, which are common to most any job, are relevant to whether interns are employees entitled to be paid under the FLSA and, if they are, whether they are sufficient to offset the productive work that Hearst interns performed.  *See* Bien Decl. Ex. 241 (DOL Factors) at 2 ("[I]f the interns . . . are performing productive work . . . then the fact that they may be receiving some benefits in the form of a new skill or improved work habits will not exclude them from the FLSA's minimum wage and overtime requirements because the employer benefits from the interns' work"); *Archie*, 997 F. Supp. at 533 (individuals who "benefitted enormously" from basic job skills learned while working for defendant nonetheless were employees because defendant gained an "immediate and greater advantage" from their work).

---

[5]     Even if it is a factor, the Supreme Court has held that the expectation of pay in the form of wages is not determinative of whether a plaintiff is an employee under the FLSA.  *Tony & Susan Alamo Found.*, 471 U.S. at 301 ("protestations" that workers did not expect compensation, "however sincere, cannot be dispositive. The test of employment under the [FLSA] is one of economic reality") (internal quotation marks and citation omitted).

Finally, to the extent that there is a dispute as to the proper legal standard, that question is also common to the class because it will have the same answer from intern to intern.  For example, a district court in this district recently held in a wage and hour misclassification case that the question of "how to assess the[] relative importance" of the plaintiffs' job duties where the central merits issue would require the court to determine the extent of managerial work that the plaintiffs performed was a common question proper for class treatment.  *Jacob v. Duane Reade*, *Inc.*, No. 11 Civ. 0160, 2013 WL 1137024, at *6 (S.D.N.Y. Mar. 20, 2013); *see also Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, 2004 WL 5719589, at *7 (S.D.N.Y. Mar. 31, 2004) (common questions include the legal standards by which certain defendants could be held liable for the actions of other defendants); *Langley v. Coughlin*, 715 F. Supp. 522, 560 (S.D.N.Y. 1989) (where law was unsettled surrounding defendants' assertion of a qualified immunity defense, legal issue raised a common question regarding the applicable legal standard for all class members).

## 2.     Hearst's Summary Judgment Evidence Bolsters Plaintiffs' Commonality Showing.

Hearst makes several statements in its Local Civil Rule 56.1 statement of additional facts in an attempt to rebut Plaintiffs' summary judgment evidence that support class certification.

For example, based on the testimony of one Marie Claire employee, Hearst contends that all Marie Claire sales interns "receive a valuable education about being in a business environment and how the magazine business operates."  Def.'s Resp. to Pls.' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 & Counter-statement of Facts ("Def. SOF") ¶ D30.  It also argues, based on the same testimony, that all Marie Claire interns "learn about the business through tasks they are assigned," such as by helping to gather "edit credits."  *Id*. ¶ D33.

Based on the testimony of one Seventeen employee, Hearst also argues that "[d]uring a Seventeen internship, an intern receives training and educational experiences both by virtue of the tasks that he/she performs and the firsthand observation of how a magazine is produced." *Id*. ¶ D86.

Similarly, based on the testimony of one Cosmopolitan employee, Hearst claims that interns at that magazine "are counseled on professionalism, the significance of confidentiality, how to work with others, and how to conduct themselves in a work environment." *Id*. ¶¶ D190, 272.

Hearst also makes several arguments that show that, in fact, it believes that certain merits questions can be answered with common proof. For example, Hearst argues that internships "at Hearst's magazines or in its departments provide students with an educational experience" and that supervisors "take additional steps to ensure that their interns receive an experience relevant to their academic credit requirements." Def. SOF ¶ 33. Hearst also argues that, across the board, "interns do not displace the work of paid employees." *Id*. ¶ 35. Hearst does not contend that these circumstances vary from supervisor to supervisor or magazine to magazine. Hearst cannot make such sweeping generalizations to support its merits arguments and then credibly argue that this case cannot be certified because all internships were different.

### 3. Hearst's Attempt to Use *Dukes* to Argue that Plaintiffs Cannot Certify a Class Fails.

Hearst is wrong that that *Dukes* bars class certification. "The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Tiro v. Public House Invs., LLC*, Nos. 11 Civ. 7679, 11 Civ. 8249, 2012 WL 6053961, at *6 (S.D.N.Y. Dec. 4, 2012) (internal quotation marks omitted). Where, as here, a corporate-wide wage and hour policy – like Hearst's uniform classification of all interns as non-employees – produces the same injury

14

for all class members, courts routinely hold that *Dukes*, a Title VII discrimination case challenging Wal-Mart's discretionary promotion practices, is not relevant.  Most recently, in *Jacob v. Duane Reade*, *Inc*., the court distinguished *Dukes*' discretionary decision-making practice from the misclassification claim at issue because, "[o]n its face, [*Dukes*] is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices."  2013 WL 1137024, at *7 n.1.  The Seventh Circuit also recently rejected a defendant's attempt to "fit" a wage and hour case into *Dukes*' "mold," by arguing that the merits would "require the same significant and time-consuming liability inquiries that the Supreme Court found problematic in *Dukes*."  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012).  The Seventh Circuit identified "significant distinctions" between *Dukes* and the plaintiffs' claims, including "the size of the class and the type of proof the *Dukes* plaintiffs were required to offer."  *Id*.  In *Dukes*, there were 1.5 million class members and in *Ross*, there were 1,129.  *Id*.  In *Dukes*, the plaintiffs were required to offer proof of individual discriminatory intent by their supervisors; in *Ross*, despite "some minor variations in how [the defendant] enforced its overtime policy," the plaintiffs asserted a "common claim that [the defendant] broadly enforced an unlawful policy denying employees earned-overtime compensation."  *Id*. at 909.  This "unofficial policy [wa]s the common answer that [would] potentially drive[] the resolution of th[e] litigation," satisfying *Dukes*.[6]  *Id*.

---

[6]      *See also Morris v. Affinity Health Plan, Inc.,* No. 09 Civ. 1932, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases rejecting *Dukes* in wage and hour cases); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 125-26 (S.D.N.Y. 2012) (noting that the "weight of authority" rejects the argument that *Dukes* bars certification in wage and hour cases because the focus in such is on whether the employer had company-wide wage policies that injured the proposed class and commonality can be established where plaintiffs' and class members' claims arise from the "common wrong[]" of defendant's failure to comply with NYLL's minimum wage and overtime

Moreover, Hearst's claim that Plaintiffs have not challenged a "centralized" policy is wrong: Plaintiffs' have challenged Hearst's centralized policy of classifying all interns as non-employees who are not entitled to wages for their work. *See* Pls. Br. at 8-9, 45-46; *see Jacob*, 2013 WL 1137024, at *6 (the uniform classification of workers as exempt "is certainly relevant to the court's decision and weighs in favor of class certification") (internal quotation marks omitted). Not only did Hearst apply this policy across the board, it relied on the same criterion to label all interns as non-employees: their eligibility to receive school credit. Pls. Br. at 8-9. Moreover, Hearst did not take into account any of the purported differences among interns that it now claims exist for litigation purposes when it classified all interns as non-employees. *Id.* This set of facts could not be farther from the situation in *Dukes*, in which there was no centralized promotion policy and instead individual decision-makers had complete discretion to apply their own criteria to make promotion decisions. *Wal-Mart Stores*, 131 S.Ct. at 2554.

Plaintiffs have done far more than challenge Hearst's classification policy, they have also shown that, across its magazines and departments, substantial evidence unites the class in ways that are relevant to the factors that the Court will apply to decide the merits. Despite the differences that Hearst claims exist among its magazines, whether by default or by design, the magazines use interns in very similar ways and provide them with similar experiences, and interns come away saying similar things about their internships. *See Jacob*, 2013 WL 1137024,

---

requirements) (internal quotation marks omitted); *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (distinguishing *Dukes* because plaintiffs' claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices . . . alleged a common injury that is capable of class-wide resolution"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) ("[u]nlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide [classification] policies, as implemented, violated Plaintiffs' statutory rights") (internal quotation marks and citation omitted).

at *13 (certifying class despite variations among class members' experiences "at the margins," because "most, if not all, [class members] perform[ed] a similar swath of duties, ranging from customer service to office work").

### B.      Hearst's Predominance Attack Also Fails.

Hearst does not rebut Plaintiffs' predominance arguments.  *See* Pls.' Br. at 47.  It also does not show how individualized issues will predominate over the common issues in light of the substantial generalized proof to which Plaintiffs pointed.  *See* Def.'s Opp'n at 42.  To the extent that Hearst points elsewhere in its brief to ways that internships purportedly differed among interns, these "differences" are overblown and "at the margins," and do not "overshadow those common threads that bind the claims of the putative class."  *Jacob*, 2013 WL 1137024, at *11, 13.

First, Hearst claims that interns benefited from their internships in different ways.  Even if interns used different words, they described very similar benefits: learning office skills, professionalism, and office etiquette, gaining contacts, and getting career advice and job references.  *See* Def.'s Opp'n at 18.  Plaintiffs do not dispute that these are generally the benefits that interns received.  They dispute whether these benefits render Hearst's unpaid internship program legal.  *See* Bien Decl. Ex. 241 (DOL Factors) at 2.  Moreover, the benefits that Hearst has identified are easy enough to generalize across the class that they will not raise individual questions and certainly will not predominate over the many common issues that unite the class. *See Jacob*, 2013 WL 1137024, at *12 (where class members "described their jobs as a mix of a similar set of duties, including working the cash register, assisting customers, stocking shelves, [and] arranging products[,]" among others, the court would be able to assess their primary duty on a classwide basis).

17

Second, Hearst claims that interns' training varied and that this variation will result in individualized issues.  However, Hearst does not dispute that, across the board, its internship program was not structured around a classroom or academic experience.  *See* Ex. 241 (DOL Factors) at 1; *Archie*, 997 F. Supp. at 533 (holding that plaintiffs were employees because, despite the training that they received on-the-job and the job skills that they gained, their training was not structured around vocational experience).  To the extent there were variations in the formal training that interns received, they were minor.  For example, at most, interns attended a training program once a week.  *See* Def.'s Opp'n at 13.  Furthermore, Hearst does not dispute Plaintiffs' evidence that interns primarily received training by learning on-the-job or deny that this is an important merits issue.

Third, Hearst claims that whether interns impeded Hearst's work is an individualized question.  *See* Def.'s Opp'n at 42.  However, when cross-examined, most of Hearst's witnesses admitted that interns provided useful assistance to them.  For example, Marguerite Berard, a supervisor, testified that she assigned interns research projects.  Ex. 292 (Berard Tr.) 69:4-71:22. Caitlin Dunn, a supervisor, testified that interns benefit Hearst and are "really helpful."  Ex. 293 (Dunn Tr.) 118:18-119:10; 121:19-122:2.  Robin Hilmantel, a supervisor, testified that interns perform helpful research and other editorial tasks for her.  Ex. 289 (Hilmantel Tr.) 22:15-18; 24:23-25:10; 32:9-21; 33:8-12.  Molly Ritterbeck, a supervisor, testified that she relied on interns to do research and perform tasks that keep the department running smoothly.  Ex. 297 (Ritterbeck Tr.) 142:7-20.  Rachel Rothman, a supervisor, testified that interns are helpful in testing products and writing blog posts.  Ex. 295 (Rothman Tr.) 49:2-17; 54:7-25; 108:9-20. This testimony and the many other examples of similar testimony that Plaintiffs cited, *see* Pls.' Br. at 9-13, show that interns generally provided assistance that lightened the load of paid

employees, even if some interns were more helpful than others.  *See Jacob*, 2013 WL 1137024,

at *15 ("Predominance requires meaningful consistency, not indistinguishable identity.")

Fourth, Hearst claims that interns' supervisors supervised them in different ways.  *See*

Def.'s Opp'n at 16.  However, in light of the other evidence, including that supervisors generally

provided the same level of supervision to interns that it provided to its regular workforce, that

supervisors were not required to stand by while interns performed their duties, and that

supervision was not constant, *see* Pls.' Br. at 18-19, these differences in management style will

not predominate.  *See Jacob*, 2013 WL 1137024, at *14 (differences among class members'

managers' management styles did not predominate in light of other evidence showing that class

members were largely consistent in ways relevant to the merits questions).

Finally, Hearst cherry-picks from the evidence in order to attempt to fabricate differences

among interns.  *See* Def.'s Opp'n at 12-13.  A closer look at the testimony in context shows that

these interns described experiences that were consistent with what other interns said:

- Hearst contends that no other intern had responsibilities similar to Wang's responsibilities because she was a "head intern," but Wang testified that two of her friends worked at Marie Claire as head interns in its fashion closet. Ex. 287 (Wang Tr.) 177:16-178:8.  Wang also testified that she performed many of the same tasks as regular interns in Harper's Bazaar's accessories closet. *Id*. at 233:20-244:4.

- Hearst claims that Jessica Roelant, a Good Housekeeping Research Institute intern, was unique because she tested products, but her testimony shows that she performed many of the same tasks that editorial interns at other magazines performed, including drafting editorial content and coming up with ideas for stories. *See* Pls.' Br. at 11; Ex. 312 (Roelant Decl.) ¶ 7.

- Hearst notes that Danielle Henderson "shadowed" a Hearst employee at a trade show, but like other advertising sales interns, Henderson testified that she compiled edit credit reports, helped with marketing events, and prepared for sales calls.  Ex. 294 (Henderson Tr.) 89:12-20; 96:8-14; 103:15-17; *see* Pls.' Br. at 12-13.  She also testified that the trade show lasted just "a few hours."  Ex. 294 (Henderson Tr.) 112:12-113:6.

- Hearst highlights the fact that a Cosmopolitan intern researched candidates for the 2008 Presidential election and wrote an article, but other editorial interns also testified that they frequently did research and wrote content.  *See* Pls.' Br. at 11.

- The Women's Day beauty & style intern that Hearst discusses performed many of the same tasks that Skorka performed at Redbook, including assisting in the beauty closet, conducting research, attending "desksides" with publicists, and drafting editorial content. Ex. 282 (Skorka Tr.) 85:6-18; 108:14-109:2; 114:16-23; 116:18-22; 125:20-136:2; 211:23-212:3.

To the extent that Hearst's examples are probative at all, they "do not eliminate the overriding consistencies present throughout all of the testimony" that unite the members of the proposed class.  *Jacob*, 2013 WL 1137024, at *7.[7]

### C.    Hearst's Superiority Argument Is Meritless.

Hearst does not challenge Plaintiffs' showing of superiority, but instead contends that class certification would be unfair to class members who might wish to have their claims determined on an individual basis.  *See* Def.'s Opp'n at 42.  However, any class members who wish to pursue their claims individually will have the right to opt-out of the class.  Thus, Hearst's "deep[]" concern for absent class members is unfounded.

### <u>CONCLUSION</u>

For the foregoing reasons and the reasons in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant their Motions for Partial Summary Judgment and Class Certification.  ECF Nos. 105-106.

---

[7]    Hearst argues in a footnote that the Court will not be able to determine damages unless it individually evaluates each class member.  However, it is well-settled that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues." *In re VisaCheck/MasterMoney Antitrust Litig*., 280 F.3d 124, 139 (2d Cir. 2011), *overruled on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006).  There is also no reason why the straightforward damages questions here – approximate hours worked per week – could not be established through the testimony of a representative sampling of class members.  *See Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

Dated:      March 25, 2013
              New York, New York

                                    Respectfully submitted,

                                    **OUTTEN & GOLDEN LLP**
                                    By:

                                    /s/ Rachel Bien
                                    Rachel Bien

                                    Adam T. Klein
                                    Rachel Bien
                                    Juno Turner
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016
                                    Telephone: (212) 245-1000

                                    *Attorneys for Plaintiffs, the Collective, and the*
                                    *Proposed Class*